### No. 11,133.

THE STATE EX REL. E. D. MILLER, DISTRICT ATTORNEY, VS. D. J. REID, SHERIFF, ETC.

1. Notwithstanding a district attorney declines to prosecute an appeal from an adverse judgment, in an intrusion-into-office suit, the Attorney General may, without being justly chargeable with the performance of an act *ultra vires*.

The former did not thereby cease to be relator, nor the latter become a party to the suit.

The objection urged does not appertain to the *status* of the appeal, but to the *status* of the cause.

Under the law the Attorney General has undoubted authority to appear before this court, sitting in New Orleans, and prosecute and defend all appeals in cases, criminal or civil, in which the State may be a party, or interested; and this authority necessarily draws to it authority to apply for and obtain an order of appeal.

2. An averment made in a suit brought against a sheriff for his removal from office, under the provisions of Arts. 196 and 200 of the Constitution, to the effect that he was duly elected, commissioned and qualified as sheriff, though subsequently filed, can not operate, or be given effect as an estoppel against the further prosecution of a pending suit previously filed against same respondent for his removal from office, on the score of constitutional ineligibility to hold office.

In such second suit, such averment is not a germinal or controlling one, but merely descriptive of the respondent's capacity, preparatory to the further allegation that he had, during his incumbency of the office, been guilty of repeated acts of malfeasance and nonfeasance in office, on account of which he should be removed from office.

3. Under the intrusion-into-office statutes the police jury of a country parish being a party interested in the question may be joined as relator; and they clearly contemplate such party as may have complaint to urge of the respondent's ineligibility, and do not exclusively to rival claimants to office.

But inasmuch as the district attorney was fully capacitated to institute and prosecute such suit independent of any other party being joined as relator, that was a sufficient reason for the disallowance of respondent's exception on that score.

State ex rel. District Attorney vs. Sheriff.

4. The admissibility *vel non* of testimony at the trial does not exclusively depend upon the then existing attitude the case is in, in point of fact, but, in part, upon the pleadings; for, notwithstanding plaintiff has not offered affirmative proof of some of his allegations on the opening of his case, the respondent may be constrained to put in evidence, lest advantage be taken of its absence. It is, at all events, better practice to rule evidence in than out of a case.

5. In case the proof discloses proper and sufficient settlements to have been made during preceding years between a tax collector and a police jury, a subsequent settlement between the same tax collector and a succeeding police jury can not be made to depend on such collector undertaking to reopen such preceding settlements and re-establish their correctness, contradictorily with such police jury, under compulsion of the latter. Such settlements must stand until they are annulled and set aside in due course of law.

In such suit as this no advantage can be taken of the respondent for declining to tender and make settlement on such terms.

6. In the constitutional disqualification to hold office is the idea not only of debt, but of default with dishonor—not only that the collector owes, but that he owes money collected and in his hands—not only that he is debtor, but defaulter. The denunciation of the organic law is that no person who has been a collector of taxes shall be eligible to any office of honor, trust or profit, until he shall have obtained a discharge for all moneys he has collected, or which have been entrusted to him.

The penalty of ineligibility can attach only in the particular event pointed out, the failure of a tax collector to obtain a discharge for moneys actually collected. It can not attach to a failure of a tax collector to make collection of taxes remaining uncollected.

The evident object and dominant idea of the framers of the Constitution was to exclude from office defaulting tax collectors and other public functionaries; they had no purpose or intention of making the eligibility of the citizen to hold office depend upon mere pecuniary liability to the State.

7. The statutes governing the duties and defining the responsibilities of tax collectors must be examined and construed in order to ascertain what is the true definition and purport of the constitutional phrase " obtain a discharge for the amount of such collections." And, as an aid to the determination of the question, adjudicated cases on questions *in pari materia* may be examined and considered also.

8. Having thus examined and compared the revenue laws applicable, as well as pertinent decisions interpreting similar provisions of a prior Constitution, it appears that a parish treasurer's receipt for moneys collected and paid over by a tax collector furnishes the primary and best evidence of a discharge for such collections as he has made.

APPEAL from the Twelfth District Court, Parish of Calcasieu. *Fournet, J.*

*M. J. Cunningham*, Attorney General, *D. B. Gosham* and *R. P. O'Bryan* for Plaintiff and Appellant:

The State of Louisiana and the police jury of Calcasieu parish are co-plaintiffs and joint litigants in this case. The police jury has the right and authority to em-

ploy associate counsel. The petition being signed, with the consent of the district attorney, by co-counsel, is an admission by him that said counsel jointly with him represent the interests of plaintiffs. He is concluded thereby and estopped from denying their authority. 5 An. 119; 24 An. 135, 136; 1 Dillon Municipal Corp., 4th Ed., Sec 479.

The district attorney is not plaintiff in this case. He is not the State, but only of counsel for the State; and neither he nor the Attorney General can acquiesce in a judgment adverse to plaintiffs. 25 An. 434; 30 An. 70; 27 An. 319; 29 An. 147; 33 An. 711; State ex rel. Ford vs. Attorney General, 33 An., not reported in full.

Act No. 65 of 1884 is unconstitutional—in any event the Attorney General had power to appear herein. 5 N. S. 344; 41 An. 910.

The court will only pronounce a law unconstitutional when it is manifestly so. 3 M. 12; 4 N. S. 138; 3 R. 383; 8 An. 384; 9 An. 562; 20 An. 198, 587.

The title of an act need not be a synopsis of its contents. 37 An. 188.

On a motion to dismiss an appeal the interests of parties appealing can not be inquired into. Their interests and their rights in the litigation must be determined on the trial of the merits. 21 An. 669, 670; 26 An. 42, 43; 30 An. 70, 71; 28 An. 548.

The appeal in this case was regularly granted by motion made in open court; and all the conditions thereof have been complied with.

The appeal was taken to the first ensuing session of the Supreme Court, which had full authority on proper showing made by any counsel in the case to extend the return day. 2 R. 237; 33 An. 712; C. P. 883.

The appearance made by counsel before the Supreme Court at Shreveport, La., was on behalf of all plaintiffs, as appears by said motion. The extension of time and the return of the appeal to New Orleans was proper.

---

*Wm. Schwing, Clegg & Thorpe* and *E. N. Pugh* for Defendant and Appellee:

Suit under Act 156 of 1868, known as Intrusion-in-Office Act.

I.

Officers of State are but agents exercising delegated powers.

Special authority to use the name of the State with all its privileges and prerogatives, to appear in judicial proceedings, and to sue or be sued in her behalf is absolutely necessary. C. C. 2997; 9 An. 402; 5 N. 5327; 25 An. 434; 29 An. 774; 34 An. 483; 33 An. 510; Ex. parte Drum., 8 C. C. 207; 7 An. 192; 11 Wal. 199.

The Attorney General and district attorney belong to the "judiciary department;" their powers and duties fixed by Legislature. Const., Arts. 94, 124; Act No. 96 1880; R. S., 131, et seq.; 17 How. 512; Acts 1862, p. 62, No. 21; 1880, No. 6, p. 14; 27 An. 29; Acts 1877, E. S. 109.

When the Constitution or Legislature has made a particular officer the depository of a specified power, neither the court nor any other officer or authority can exercise this power. The exercise of it belongs to the officer and can not be waived. 7 An. 189; 31 An. 837; 51 Texas, State vs. Moore; 5 A. and E. Ency. 712; 18 An. 677; 20 An. 432; 30 An. 954; 31 An. 63, 863; 35 An. 196; 21 An. 551; Black Jurisdiction, Secs. 18, 49; 24 How. 508.

"The Intrusion-in-Office Act" vests the Attorney General with exclusive jurisdiction in the parish of Orleans alone. District attorneys outside of Orleans have sole control and charge of suits arising under this statute. Whether after

State ex rel. District Attorney vs. Sheriff.

trial in court an appeal shall be taken by the State is to be decided by the Attorney General or the district attorney, as the case may be. This decision is final and conclusive. 32 An. 267; 14 An. 251, 227; 33 An. 1358; 30 An. 517; 18 An. 195; 3 M 57; 24 How. 503; 133 U. S. 557; 40 An. 854; 28 M. 38; 61 Jc., 548; 55 Cal. 378; 61 Md. 648; 128 U. S, 40; 31 An. 713; 27 An. 169, 458; 30 An. 710; 22 An. 603; 21 An. 323; 18 An. 195; 26 An 83; 164 U. S. 636; 8 N. S. 644; 91 U. S. 340; 96 U. S. 535; 13 Pet., 5, 11; 9 How. 333; 18 How. 44; 20 How. 6; 13 Wal. 72; 19 Wal. 653; Black Jurisdiction, Sec. 532; 98 N. Y. 222; 11 Pac. Rep. 602; 55 Cal. 375.

The Attorney General in Orleans and the district attorneys outside of Orleans are the only persons who can represent the State in such suits. 18 An. 657; 20 An. 422; 30 An, 954; 35 An. 196; 31 An. 837; 36 An. 903; 32 An. 918; 27 An. 662.

Act 156, special statute, and by this statute alone has the court jurisdiction over the subject matter. Statutes must be strictly followed, taken as a whole or not at all. 33 An. 265; 18 An. 90; 25 An. 15, 268; 28 An. 698; 41 An. 849; Suth. Const. Stat., Secs. 399, 392, 394; Black Jurisdiction, Secs. 14, 19; 38 An. 973; 14 An. 187.

The Attorney General has no supervisory control over the district attorney, and if he had it would embrace ministerial duties and not cases where the law itself requires the district attorney to exercise his discretion and judgment. 31 An. 642; 6 R. 63; 8 R. 533; 33 An. 267; 133 U. S. 215; 14 An. 251; 24 How. 508; 4 I. C. 327; Black Jurisdiction, Secs. 18, 49; 14 Peters; 18 How. 524.

14 An. 227; Hew. 335, Nos. 11, Co irt, Art. 90; 31 An. 836; 36 An. 903; 32 An. 918; 27 H. 663; 22 Wal. 641; 2 Dal. 409; 410 N. District attorneys have a discretion as to entering a nol. pros. Could the Attorney General prevent the exercise of this discretion, or could he substitute in case of difference and against the will of the district attorney, his judgment and discretion to that of the district attorneys? Undoubtedly not. 6 R. 63; 8 R. 533; 31 An. 642.

The State not having appealed this litigation ends. No "interested party" is before the court. The police jury lays no claims to the office. 33 An. 266; 21 An. 655, 18, 710; 33 An. 784; 25 An. 365; 33 An. 493; 21 An. 712; 25 An. 274; C. P. 15; 15 An. 171; 15 An. 507; 23 An. 25, 787; 22 An. 18; 63 N. T. $20; Wait. V. S., p. 265; 34 An. 931.

The pleadings fatally defective police jury not a party. 38 An. 630, 706; 33 An. 58.

Can not sustain appeal as third parties, nor as an individual. Suc. of Venard, lately decided; 28 An. 324; 27 An. 820; 21 An. 743; C. P. 571.

No pecuniary interest. 21 An. 743; 32 An. 911; 34 An. 836; 25 An. 17; 26 An. 627; 32 An. 173.

No order of appeal by Vincent individually. Hew. 45, No. 2; 23 An. 543; 24 An. 276; 35 An. 833; 35 An. 935.

Counsel of police jury alone changed time and place of return of this appeal, the State doing nothing. This court exercised original jurisdiction. Sec. 12, Act 156; Sec. 45 of 1870; 2 L. 511; C. P. 514; 22 An. 551; 32 An. 281; 33 An. 131; 35 An. 888, 981; 38 An. 905; 40 An. 297; 37 An. 709; 43 An. 130; 32 An. 119.

Act of 1874 unconstitutional, body not covered by title. Court Art. 29, 33 An. 67; 5 An. 94; 6 An. 605; 42 An. 142; 44 An. 90.

This act, if relied on, is set up and in this court, and for the first time, the Attorney General taking no part, heretofore never having appeared in District Court. 37 An. 504.

## ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

WATKINS, J. The several grounds assigned in defendant's motion

need not be enumerated, but may be stated and decided *seriatim* more conveniently.

The *first* in order is that there are no proper parties to this appeal.

It appears that the district attorney, who filed suit and represented the State as relator and party plaintiff, declined to prosecute an appeal from the judgment rendered in favor of the defendant, and the Attorney General applied for and obtained an order of appeal, and has appeared in this court personally and by brief, in connection with other counsel, and represented the State; and the argument is, that the State of Louisiana, the only *real* plaintiff, has not appealed, and that the *acts* of the Attorney General are *ultra vires*, because " in this particular instance he was and is entirely without power, right or authority *to stand in judgment* for his *principal, the State.*"

We are clearly of the opinion that this objection is untenable. It does not appertain to the *status* of the *appeal*, but the *status* of the *cause.*

The suit was properly instituted by the district attorney as relator, personating the State; but, forsooth, he declined to prosecute an appeal from the judgment therein rendered, it does not follow that he *ceased* for that reason to be the relator; nor does it follow that because the Attorney General did prosecute an appeal that he became or attempted to assume the position or capacity of relator.

While *it* is not doubted that the Attorney General had no power or authority in law to *institute suit as relator*, it is equally clear and undoubted that he has the capacity to appear in this court and represent the interest of the State in any given controversy. The duties of that officer are particularly defined in the Revised Statutes, and they declare, *inter alios*, " that he shall appear for the State in the Supreme Court sitting in New Orleans, and *prosecute and defend all appeals in cases criminal or civil in which the State may be a party* or *interested.*" Revised Statutes, Sec. 131 (italics ours).

This authority is supplemented by a more recent statute, which empowers him " to institute and prosecute *any and all suits he may deem necessary for the protection of the interests of the State.*" Sec. 1, Act 65 of 1884.

There is no question of the authority of the Attorney General under those statutes to *prosecute* the present appeal, and that power and authority necessarily draw to them authority and power to obtain an order of appeal.

It is clear that the quoted precepts of the written law furnish a complete answer to defendant's contention. In *prosecuting an appeal* in such a case as this the Attorney General *does not attempt to personate the State as relator.* The district attorney does not, on that account, cease to be relator. The situation and attitude of the parties, respectively, remain the same as they at first existed in the District Court. There is not *properly* presented, in the motion to dismiss, any question of the capacity of the Attorney General to stand in judgment. But it is quite clear that he could not. And, in so far as the right of the district attorney to join the police jury as party plaintiff is concerned, its determination must be postponed to the consideration of the merits.

The *second* ground of objection is that this court was without power to so change the *place* at which this appeal is to be heard and determined as to transfer the cause from Shreveport, where the order of appeal made same returnable, to the city of New Orleans for trial and decision.

The order of court transferring this cause from Shreveport to New Orleans was evidently made upon the theory that the parties had consented to such transfer.

The record discloses that at our recently adjourned term at Shreveport the plaintiffs requested, in a written motion to that effect, "that the return day be extended and made returnable to the next regular session of this court in New Orleans and on the 21st of November, 1892."

The reason assigned for this extension was that it was necessary to enable the clerk to complete the transcript, and in verification thereof the clerk of the court of Calcasieu furnished proper certificate.

Upon this paper is this endorsement, viz.: " Reserving any and all right to dispute the right or manner of appeal, the legality thereof and all rights under the law to have the appeal dismissed, we admit," etc.

We can not construe this endorsement as reserving to defendant any right to dismiss the appeal on the ground stated. If not consented to in express terms the transfer of the cause was *impliedly* consented to. Otherwise the admission was meaningless.

But in any event this can furnish no ground for the dismissal of the appeal, for, if defendant be correct in his interpretation of the

waiver, his only right would have been to move for the re-transfer of the cause to Shreveport for trial, as having been improperly removed therefrom. In this respect the motion is not well grounded.

These are, substantially, the only grounds on which the defendant appears to place reliance, because they are the only ones argued in brief; hence all others may be treated as having been abandoned.

There is no merit in the motion, and it is therefore denied.

### ON THE MERITS.

This suit is instituted under the provisions of the intrusion-into-office law for the purpose of testing the *eligibility* of the respondent to hold and exercise the office of sheriff and *ex-officio* tax collector, and the relators pray judgment ousting the respondent therefrom on the ground " that he was and is ineligible to said office and absolutely disqualified and prohibited by Article 171 of the Constitution of the State from holding or being elected to any office of honor, profit or trust under the State government, and particularly to the office of sheriff."

Averment is made to the effect that the respondent was elected sheriff of the parish of Calcasieu in 1884, again in 1888 and again in 1892, and is now occupying said office, exercising its duties and enjoying its emoluments; but that, on account of his alleged ineligibility, he is an usurper of and an intruder into said office.

The particular grounds upon which the charge of ineligibility rests are set out very circumstantially in the relators' petition, as follows, viz.:

That the defendant by " virtue of said election and re-election qualified as said sheriff and tax collector and collected large sums of money belonging to the said parish and the school board thereof; that no legal settlement has been made with said parish or school board; that he has never obtained a legal discharge for such collections for public moneys with which he has been entrusted.

"That said Reid has never made settlement with said public school authorities for such moneys arising from the levy of taxes and imposition of poll taxes for school purposes for the years 1884 to 1891 inclusive, and never obtained a quietus from the said parish board of school directors for a single year of his said incumbency as tax collector, and is indebted to said school authorities for collection of said school taxes in a sum exceeding $10,000.

"That said Reid has never accounted to nor settled with the police jury of said parish for taxes and licenses levied during the years 1884 to 1891, inclusive; has' never presented any proper de-- duction lists, nor rendered any statement touching said taxes and licenses, though repeatedly amicably demanded, and has never received valid discharge therefor; and is indebted to said parish on account thereof in a sum exceeding $10,000.

"That whatever documents may be held by said Reid purporting to be a quietus coming from the police jury, notably those of dates October 12, 1889, and October 9, 1890, are null and void and should be so declared, having been issued in error of fact, the said Reid having made no statement showing amount collected by him and amounts remaining uncollected and uncollectible during said years; and no investigation was made into the accounts of said Reid, and that the foregoing is to the detriment and injury of said parish.

" Petitioners pray for judgment decreeing the alleged quietus null and void, and further that said Reid be declared ineligible to and an usurper and intruder into said office of sheriff and tax collector, and that the same be declared vacant, and for general relief."

To the petition and to the capacity of the relators, and especially of the police jury, a variety of exceptions were tendered, filed, tried and overruled, and the case went to trial before a jury, and from a verdict and judgment in favor of the defendant the relators have appealed.

I.

The *first* exception defendant tendered was that of abandonment and estoppel.

This plea in bar has direct reference, not so much to the *suit* that was subsequently filed against the respondent as to an *averment* in that suit, the *effect* of which is urged as an estoppel against the instant suit of relators.

This suit was filed on the 22d day of August, 1892, and the one referred to was filed only three days subsequently. The latter is a suit instituted by the district attorney, joined by citizens and taxpayers as relators, the object of which is the removal of defendant from the office of sheriff, under the provisions of Articles 196 and 201 of the Constitution. The averment in that suit relied upon is, that defendant was elected sheriff on the 19th of April, 1892, and has been .commissioned and qualified as such, and that he is sheriff of

said parish of Calcasieu.  Thereupon the exceptant states, that "by said judicial averment, allegation, declaration and admission * * * the said plaintiff has abandoned this suit, and is forever precluded from prosecuting the same," etc.

Not so; because in the said second suit the quoted averment was not a germinal or controlling one, but merely *descriptive* of the defendant's capacity or *status* preparatory to the further allegation that he had, during his incumbency of the office, been guilty of repeated acts of nonfeasance and malfeasance in office, and, also, of corruption, favoritism, extortion and oppression *in office*, for which causes he should be *removed* from office.

The objects to be attained by each of said suits are quite different. Those to be attained in this suit are, the ascertainment of the defendant's *ineligibility to* the office of sheriff and his deprivation of office on that ground; while those to be attained in the latter suit are, the ascertainment of defendant's misbehavior and illegal acts *while in office*, and his *removal* therefrom on that ground.

As this court very justly observed in the Cheevers case, "ineligibility refers to certain disqualifications existing *previous to the election*." (Italics ours.)   State ex rel. Attorney General vs. Cheevers, 32 An. 941.

Corruption, extortion, favoritism and oppression in office, are charges that necessarily *arise*, or spring into existence, during the defendant's occupancy of office.

Plainly, there is no inconsistency between the two suits, and the allegation complained of was a necessary incident of the averments of the relation on which relators' prayer for relief is founded.

The plea and exception were properly overruled.

## II.

Subsequently to answer the respondent tendered and offered to file a plea of no cause of action, and of no right of action disclosed, to which relators' counsel objected as coming too late. But the plea urged is somewhat of the nature of a peremptory exception founded on law, and pleadable at any time.

The district judge so held, and correctly.

Subsequently, respondent's counsel, over relators' objection, filed a further exception to the effect that the suit discloses no party plain-

tiff with whom the issues tendered can be litigated, or who are capacitated to stand in judgment.

While this course of excepting is somewhat circuitous and the exceptions are amenable to the objection of having been urged *seriatim*, yet we can not discover impropriety in the judge's ruling to entertain this one, as it is, also, peremptory in character—the point of it being that the police jury was without capacity to be joined as relator, or to stand in judgment in this suit; not that it was not duly authorized so to do.

The intrusion-into-office law directs that such an action as this "may be brought before the proper District¸Court by the Attorney-General in the name of the people of the State, upon his own information, *or upon the complaint of any private party*, against the person or persons offending," etc., (Sec. 1, Act 58 of 1868) ; and "that when an action shall be brought   *   *   *   by virtue of this law, on the relation or information of a person *having an interest in the question*, *the name of such person shall be joined with the people as plaintiff.*" Section 2, Id.

But that statute was, at the same session of the General Assembly at which it was enacted, so amended as to require such suit to be brought by the district attorney in country parishes, in the name of " *any other person interested*, in the name of the State, or upon the information of *any private party*, against the party or parties offending," etc.   Sec. 1, Act 156 of 1868.

This language is not readily misconstrued or susceptible of misapprehension; and it is apparent that the police jury of a parish is such a " person " as is contemplated in the statute, although it might not be, in a proper sense, " *a private party*," such as it contemplates.

This specification of the statute clearly refers to a *private party making complaint* of the ineligibility of the respondent, and not a rival claimant to the office, and is entirely independent of the additional provision that permits such a claimant to be made relator. But the district attorney was fully capacitated to institute and prosecute such suit entirely independent of any other party being joined as a relator; and this of itself is a sufficient reason for the disallowance of respondent's exception.

At the stage of *proceedings* when presented, the *authorization* of the police jury to *act* in the premises could not be put at issue, as, in this particular, the exception was dilatory, and came to late.

### III.

During the course of the trial plaintiffs' counsel urged objection to respondent's offer of testimony, oral as well as documentary, for the purpose of showing settlements he had made with the police jury and the school board.

The argument presented on this point is that such testimony was inadmissible under the pleadings, as " the sole question to be tried was whether or not defendant had obtained *the* discharge required under Articles 119 and 171 of the Constitution, and Sec. 6 of Act 120 of 1880, on or prior to April 19, 1892.          *          *          *

" Plaintiff does not ask for any money judgment, although, incidentally, the petition does charge that defendant is indebted to the parish and school board, each in the amount of $10,000, and also attacks the validity of certain documents purporting a *quietus* claimed by the defendant for the years 1884 to 1889 inclusive; but no evidence was introduced by the plaintiff in support of said allegation, and this point was not *pressed* by them in so far as this suit is concerned."

While this may be the present attitude of the case in point of fact, yet the admissibility *vel non* of testimony must depend upon the pleadings, and not upon the mere failure of plaintiff to offer proof in support of them.

Recurring to the quoted averments of the plaintiffs' petition we find it therein distinctly charged that the respondent has collected large sums of money belonging to the parish and the school board, and has made no settlement thereof; that defendant has never obtained a *legal discharge* for such collections of public money, nor has he ever made *settlement* with the parish or school board for such moneys as have arisen from the *levy* of taxes and the *imposition* of poll taxes for school purposes, for the years 1884 to 1891 inclusive; that he had never obtained a quietus from the parish or school board for a single year of his incumbency as tax collector; that he has never presented any proper deduction list, nor rendered any statement touching said taxes and licenses, though repeatedly amicably demanded, nor received any valid discharge therefor, and is indebted to the parish on account thereof in a sum in excess of $10,000.

Their further allegation is that whatever documents may be held by said defendant, purporting a quietus obtained, and notably those of date October 12, 1889, and October 9, 1890, same are null and void,

and should be so declared, they having been issued in error of fact, "the said defendant having made no settlement showing amounts collected by him, and the amounts remaining uncollected during said years."

These averments are broad enough to make all proof introduced admissible on part of the respondent, independently of the averments and denials contained in his answers—it being a general denial, coupled with the allegation that he had, *prior to date of election*, paid over to, and obtained proper and complete receipts and acquittances from the police jury and the parish treasurer, for *all* moneys he had collected, or with which he had been intrusted as tax collector, and that they constituted " a discharge " in the sense of Art. 171 of the Constitution.

## IV.

On the trial, relator's counsel abandoned their attack on the various quietuses respondent had obtained from the police jury for the years 1884 to 1889 inclusive, and confined themselves to the issues, *first*, whether respondent had obtained a discharge or quietus from the *police jury* for taxes and licenses collected during the year 1890; *second*, whether he had obtained a quietus or discharge *from the school board* for the years 1884 to 1891 inclusive—evidently claiming a quietus and discharge to be convertible terms, having like signification in a constitutional sense.

Confining ourselves to the foregoing propositions, we find on the former the evidence clear to the effect that—

(*a*) The respondent had, at the date of election, on the 19th of April, 1892, made no *final settlement* with the police jury for taxes and licenses collected and for collections *not* made that year; and that they had given him no quietus or discharge therefor; but that it also shows, indisputably, that respondent did tender to the police jury, in the month of March preceding the general election in April, a statement of all such collections and deductions due him on account of collections *not* made for and during the year 1890; and that the police jury not being at the time in session, and his demand of settlement not being heeded, he sought to *coerce* action upon his report and statement, without avail.

Relators' counsel cite and rely upon the statute, which declares that " tax collectors shall make their *final settlement* with the   *   * police jury within ten days after the 20th of July of each year, and

every collector failing to comply with this section shall be proceeded against as provided by law." Sec. 79, Act 98 of 1886, p. 157; Sec. 76, Act 85 of 1888, p. 136.

This argument is predicated upon those statutes, and is, in substance, that as respondent did not make a *final settlement* at the date specified in the statute nor within the following year, 1891, and made no attempt to do so until March, 1892, preceding the date of election, he was ineligible to office, and could not be *lawfully* chosen to fill the same.

(*b*) On the latter, the purport of the evidence is that the respondent made no final settlement with the *school board* for *poll taxes* collected in 1884 to 1891 inclusive, and had obtained *from the school board* no quietus or discharge therefor for any or all of the aforesaid years.

The contention of relators' counsel is that the statute which declares that tax collectors are charged with the collection of poll taxes, and that they shall make quarterly collections therefor, and that they " shall not be released from responsibility for the collection of such tax, or have a quietus therefor until they shall satisfy the parish school board, or other school authority of the parish * * *' *that the same can not be collected*," *and shall have accounted for all moneys* collected by them as poll taxes, and made a final settlement therefor, on or before the 31st of December of the year in which such collections were made, governs our decision of the question. Sec. 6, Act 120 of 1880.

He also cites the statute which declares that tax collectors " shall return by the first Saturday of each and every year, *to the school board* of the parish *a list predicated upon the list* before mentioned, by words showing all persons in the parish * * * *who have paid their poll tax, as well as all persons who have not paid the same; and shall return their reasons in writing, under oath, the causes in each instance of the non-payment of a poll tax, why he has not collected* the tax not collected." Sec. 2, Act 89 of 1888.

On this statement of fact and law, it is manifest that relators' reliance for a conviction of the respondent of ineligibility at date of election on the 19th of April, 1892, is (1) upon the fact of his not having made a *final settlement* with the *police jury* for tax collections made in 1890, and not having made a *final settlement* with the *school board* for any of the years between 1883 and 1892 for *poll taxes col-*

*lected and uncollected;* and (2) that the term *"discharge,"* as employed in Article 171 of the Constitution, must find its *most concise* and *strictest* interpretation in the *terms and provisions of the statutes* defining the duties of tax collectors and affixing penalties to their acts of *delinquency or defalcation in reference to taxes collected, or suffered to remain uncollected.*

*Per contra,* respondent states his case as follows, viz.:

That in 1889 expert accountants were appointed by the court to make a thorough examination of all his books, vouchers and accounts, and upon faith of their report the police jury issued to him a formal quietus for each of the years from 1884 to 1889, inclusive. That the reason he failed to obtain a settlement with that body for the year 1890 was that they demanded of him—being a newly appointed body— to make settlement for the years—that is to say, 1884 to 1889, inclusive—and, as a supplement to such settlement, that he annex thereto *deduction lists* for each one of said years, showing the items and aggregate amounts of taxes *remaining uncollected* in each of said years, as a condition precedent to giving him a *quietus* for the transactions of 1890.

That this demand was made and insisted upon in spite of the fact that the recorded proceedings of the police jury which preceded them in office disclosed that he had regularly accounted for his collections, and that the parish treasurer had likewise accounted for them in his reports, which had been approved; and, in spite of the fact, that not only did the minutes kept of the police jury proceedings also disclose such *final settlements* for all of said years to have been made, and quietuses given, but that same appeared of record in the office of the clerk of court.

Thereupon, counsel for respondent argues that his *final settlement for the year 1890* was *illegally* made to depend upon his undertaking, *upon such compulsion on the part of the police jury,* to reopen all of those preceding final settlements, and establish by proof their correctness, contradictorily with them; and consequently his failure to procure such settlement and obtain a quietus for that year was not a fault attributable to him, and can not for that reason work his ineligibility.

And without at present expressing decisively an opinion as to the necessity *vel non* of respondent obtaining such *final* discharge, as relating to his eligibility, it seems quite apparent that relators could

take no advantage of such final settlement having been *thus* defeated; and particularly in view of the fact that, notwithstanding relators went into court on an averment that the settlements of said years were absolutely null and void, because they were unsupported by proof, they appeared at the trial disavowing said charges and even objecting to respondent offering any proof in their support. And, more particularly, in view of the fact that in the course of the trial, and over relators' objection and exception, respondent introduced all the deduction lists of those years and fully supported and verified their truthfulness and accuracy.

Not only does respondent's counsel insist that these quietuses fully satisfy the law, and the illegal action of the police jury protect him *quoad* final settlement for tax collections and uncollected taxes of the year 1890, but that said quietuses furnished by the police jury cover and include final settlements of poll taxes as well; and that the law does not contemplate or require final settlements to be made with the *school board*.

But respondent's counsel does not rest his case on this theory. His contention is that for the argument conceding no final settlement had been made in any or all of the aforesaid years preceding date of election, his ineligibility is not, for that reason, made out, because he has in his answer averred and by his evidence *fully established* the fact that he had faithfully and promptly paid over to the proper authorities *all moneys he had collected* and was not at that date in arrears to the *police jury* or to the *school board* one single farthing; and that his receipts and acquittances constitute a constitutional discharge.

On this proposition the proof is that the respondent had obtained and produced on the trial receipts from the parish treasurer for every cent of taxes, poll or property, that he had collected, and was, in duty or in law, bound to account for *prior* to said election. That to that effect the reports of the parish treasurer were spread in full upon the *minutes* of the police jury, and same had been examined by the proper officers of the school board, and that they had examined the books from which the reports of the parish treasurer had been made, and unconditionally approved of same.

The contention of respondent's counsel is further to the effect that the discharge specified in the Constitution is, in terms, restricted to *taxes collected* and moneys *actually received* by and *entrusted* to a tax

collector, and not extended to *taxes uncollected* or *moneys not received*, and therefore a *final settlement* of the transactions of the tax collector's term of office, or of any given period thereof embracing collections made, as well as those not made, was not contemplated by the framers of the organic law.   That while it may have been an act of malfeasance or misfeasance on the part of respondent *not to collect taxes uncollected*, yet *ineligibility* is not the penalty attached thereto.   That the penalties for *failure to collect* may be severe, and one of them may be removal from office, but not one of them is disqualification to *hold office*.   That the respondent is only in court for the purpose of answering the charge of ineligibility by reason of his alleged failure to obtain a discharge for moneys actually collected and not paid out.   " In other words," says counsel in their brief, " in this constitutional disqualification is the idea not only of debt, but of default with dishonor—not only that the collector *owes*, but that he owes *money collected and in his hands*—not only that he is a debtor, but an embezzler."

The case being thus elaborately stated, the question of law thereon raised is whether the failure of the respondent to make a *final settlement* with the police jury or the school board—conceding it to have been respondent's duty to make such settlement with the *school board* for the poll taxes, which is more than doubtful—prior to the date of his election, was of itself sufficient to fix and establish his ineligibility to office, notwithstanding the fact that he had at the time of the election paid over to and had obtained a receipt from the parish treasurer for all moneys he had collected.

Article 171 of the Constitution, upon which the relators rely, is couched in the following terms, viz. :

" No person who at any time may have been a collector of taxes, whether State, parish or municipal, or who may have been otherwise entrusted with public money * * * shall be eligible * * * to any office of honor, profit or trust under the State government * * * until he shall have *obtained a discharge for the amount of such collections* and for all public moneys with which he may have been entrusted."   (Italics ours.)

To paraphrase the article, the following is the denunciation of the Constitution : That no person who has been a collector of taxes shall be eligible to any office of honor, trust or profit until he shall have obtained *a discharge for all moneys he has collected.*   In our opinion,

12

the penalty of ineligibility can attach only in the particular event pointed out, and that is the failure of a tax collector to obtain a discharge for moneys he has *actually collected.* It can not attach to the failure of a tax collector to make final settlement for *moneys uncollected,* for the plain and manifest reason that the constitutional article does not so declare. The sole and only requirement is that the collector shall obtain " a discharge for the *amount of such collections.*" What does the word "amount" refer to except the *public money* that has been entrusted to his care by the tax payers? What can the words *such collections* mean other than the taxes he has collected? They can not certainly refer to taxes that appear upon the rolls as uncollected.

The evident object and dominant idea of the framers of the Constitution was to *exclude* from office *defaulting tax collectors* and other public functionaries.

In this light the various collated averments of relators' petition take on a new and plain significance; that is, an intention to unravel and lay open old transactions and antecedent settlements which the respondent had made in previous years, for the purpose of disclosing a dereliction of duty in making payments of *moneys collected* and not accounted for. This must be the meaning of their attack upon those settlements, and likewise the meaning of their abandonment of their attack, as soon as it appeared that the respondent was prepared to meet it, as well as their having placed reliance *solely* upon the declaration that *the reduction lists show over $7000 of uncollected poll taxes,* which "under the law the defendant justly owes."

This statement is the final epitome of relators' averment and proof, and, conceding its correctness, a case of constitutional ineligibility is not made out against the respondent.

Testing the meaning of the word "discharge" by the context of the article in which it is found, it must be restricted to "the amount of such collections" as the collector shall have made, and can not be so extended as to include collections that have *not* been made, notwithstanding he may be liable therefor pecuniarily.

Testing the terms of Article 171 by other articles *in pari materia,* it can not be construed to mean that a tax collector becomes ineligible by reason of his *failure* to make *final settlement,* prior to the date of his re-election as sheriff, because Article 119 provides " that

State ex rel. District Attorney vs. Sheriff.

the sheriff *shall not be discharged as tax collector* until he makes proof that he has exhausted the legal remedies to collect the taxes," and omits to affix any penalty for failure to make collections.

Manifestly this article would be unnecessary had the framers of the organic law intended that the construction contended for by relators' counsel should be placed upon Article 171.

It is equally manifest that the words "discharge" and "discharged," occurring in each respectively, should be construed with regard to and in conjunction with the accompanying phraseology of each and thus harmonized.

The requirement of Article 171 is that tax collectors must "obtain a discharge for the amount of collections," while Article 119 provides that they shall not be released from their contractual obligations "until they have been discharged as tax collectors."

The object to be attained by each is different. As a condition precedent to the right to *hold office* Article 171 requires that a tax collector must obtain a discharge for the amount of collections made; while Article 119 prescribes as a condition precedent to his *discharge as tax collector*, involving the cancellation of his official bond and the release of his sureties, that he furnish satisfactory proof of his having exhausted all legal remedies in his efforts to collect taxes remaining uncollected.

Article 171 pronounces the penalty of *ineligibility to hold office* for a collector's failure to comply with its behest, and Article 119 indicates a *pecuniary* liability for his non-observance of its provisions.

The injunction of each, as well as the pain of each, is distinct and different.

To illustrate: If a collector punctually pays over to the proper authority *all* moneys he has collected, and obtains a receipt therefor, he is constitutionally eligible to office, notwithstanding the fact that it may be shown subsequently, by proof *aliunde*, that he had been derelict in making collection of taxes uncollected, and was consequently disentitled to be discharged as tax collector.

To further illustrate: In case a tax collector collects taxes and uses the money, he may be proceeded against criminally for embezzlement; but, on the proof disclosing that the taxes had *not* been collected through his fault or negligence, the prosecution would of course fail and the State be relegated to civil action for reparation of loss sustained.

The constitutional fiat of ineligibility is not aimed at *negligence*, but at defalcation in office. If the construction of Article 171 contended for by relators' counsel should prev il the provisions of Article 119 would be, in effect, incorporated therein and made to read thus:

No person who shall have been a collector of taxes shall be eligible to office until he shall have obtained *a discharge for the amount of such collections* as he shall have made, *and* a discharge as tax collector.

But, in our opinion, the Legislature has in effect placed an interpretation on the provisions of Article 171 in the revenue law of 1888—in full force and applicable in 1890—in that it requires that tax collectors shall make quarterly settlements " for all taxes collected and moneys received on account of the State   *   *   *   and pay the same over to the State Treasurer;" and it also requires them to make " similar settlements for *all* parish taxes   *   *   *   *with the parish treasurer.*"   Sec. 76 of Act 85 of 1888.

It requires them "in making their returns   *   *   *   of moneys collected for the State and parish, to be paid into the treasury," to state "the amount of poll tax" as well.   Sec. 75, Id.

It draws a like distinction between the pains and penalties to be inflicted for a failure to make quarterly and annual settlements, and declares that a failure on the part of a tax collector to make *final* settlement annually *with the police jury* entails as a consequence his removal from office; but that a failure to make *quarterly* settlements with, and pay over the money collected *to the parish treasurer* entails as its consequence, embezzlement.

The declaration of the statute is " that any tax collector who, having made his *quarterly or monthly settlement,* as provided in this act, or in any other act, *shall fail immediately to pay the amount so ascertained to be due,*into the State or *parish treasury, and obtain the treasurer's receipt therefor,* shall be   *   *   *   subject to the penalties provided for embezzlement."   Sections 77 and 78 of Act 85 of 1888.

This is language quite similar in import to that of Article 171 of the Constitution, that he shall have obtained " a discharge for the amount of such collections;" though the latter pronounces the penalty of ineligibility to hold office.

We think it clear, however, that we must look to the statute governing the duties of tax collectors in the collection and return of public moneys in order to find what is the true meaning of the term

discharge; and we take it to be likewise clear that, by the terms of the revenue law quoted, the discharge is evidenced by the receipt of the auditor or parish treasurer. For, not only does that statute require a tax collector to make monthly and quarterly settlements with the *parish treasurer*, but it denounces him as an embezzler in case he fails to pay over the amounts found to be due, *and obtain the treasurer's receipt therefor*.

No such penalty attaches to his failure to make his *annual* settlements of his accounts; and, in reason, no such consequence could attach on that account, because, under the operation of the system of monthly and quarterly settlements, *no money could remain unaccounted for*, until final settlement is made.

Our predecessors had occasion to construe a precisely similar provision of the Constitution in 1845, as applicable to the question of the eligibility of a sheriff and *ex-officio* tax collector to re-election, on the ground that he had not obtained a discharge for collections made, and the court said:

"No law has been cited which rendered the sheriff, although he had been a defaulter, incapable to receive the appointment *after procuring a receipt* for the public money with which he had been previously entrusted.

"He was not appointed until he produced such a receipt. * * * Being a temporary defaulter is not a perpetual bar to the right to hold office. *The disability is purged by the production of a receipt* showing that the money has been paid." State vs. Dunn, 11 An. 549; Article 30, Constitution of 1845; State vs. Hayes, 7 An. 118.

Quite a similar interpretation was placed by the Circuit Court upon an United States statute governing the duties of collectors of internal revenue, and in the course of their opinion in a suit to fix the liability of such collector for *moneys collected and not paid over*, they said, "derelictions of duty in *not making collections* can not be set up at the trial." United States vs. Glenn, 1 Woods, 400.

Indeed, the statutes relied upon by relators' counsel as requiring tax collectors to make settlements with the *school board* for poll taxes collected, for the purpose of demonstrating the *insufficiency of the treasurer's receipts as a discharge for the relator*, are themselves confirmatory of the correctness of the view we have taken, in that they do not make any reference to the aforesaid monthly or quar-

terly settlements, or to the payment of any money to the school board.

One statute simply declares that "the collector of the poll tax, or his sureties, shall not be *released from their responsibility* for the collection of such tax, or have a *quietus* therefor until he shall satisfy the school board * * * that the same can not be collected, and that such collector shall account for all moneys collected by him as poll tax for the year. A final settlement of such poll tax shall be made by the collector each year, on or before the 31st of December." Sec. 6, Act 120 of 1880.

The other statute is a little more specific in requiring that tax collectors " shall return * * * to the school board * * * a list predicated upon the list before mentioned, by words showing all persons in the parish who have paid their poll tax, as well as persons who have not paid the same, and shall return their reasons in writing and under oath, the cause in each instance of the non-payment of a poll tax, why they have not collected the tax not collected." Sec. 2 of Act 89 of 1888.

It is evident that each of these statutes deals alone with the tax collector's *civil* and *pecuniary* liability, and not with his criminal liability; with his duty to render *final* account and make *final* settlement, and not with his duty in reference to monthly and quarterly accounts. That they give to the school board the right of *direction* and superintendence, merely, *quoad* the poll tax, without conferring upon them any power of control in the matter. That they do not make any requirement of a collector, failure to perform which brings him under the law of either constitutional ineligibility or statutory embezzlement.

The foregoing authorities and statutes are entirely consistent, and harmonize with the interpretation we have placed upon Article 171 of the Constitution to the effect that ineligibility to hold office must be restricted to cases of failure on the part of a collector "to obtain a discharge for moneys" *actually collected*, and independently of whether he has procured a final settlement or not.

And the statutes quoted, as well as the cases cited, make it quite plain that the *parish treasurer's receipt* for the moneys paid over is the primary and best evidence of a collector's discharge for the collections he has made.

The best evidence of this fact is that the revenue law requires that the *parish treasurer shall transcribe the entries found in the books of the tax collector into duplicate books of his own,* so that when a monthly settlement is made the moneys paid over and *receipts are given,* these *records will verify the accuracy of the account and settlement made.*

We have treated this question as *res nova,* notwithstanding the opinion of this court in the Echeverria case, because, in our conception, it is not strictly applicable to the question at bar.

That suit was brought for the purpose of having the respondent declared ineligible to the office of sheriff and *ex-officio* tax collector, mainly because he was a *defaulter, as school treasurer,* in 1872, for a large amount of moneys he had received from the State treasurer for account of the school fund—the record fully disclosing that he had made final and complete settlement of his accounts, and had " obtained a discharge for the amount of such collections" as he had made *as tax collector.*

Hence, in that case the question remaining for decision was not as to what constituted a discharge *for collections made as tax collector,* but as to what constituted a discharge for public money that had been " intrusted " to a *school treasurer.* It is readily perceivable that other and different statutes than those referred to must be looked into for the ascertainment of the liability of such an officer, and the legal requisites for his discharge for moneys intrusted to him.

Therefore, in that case it was perfectly correct for the court to say (p. 721) that " *such a discharge* "—a discharge for public moneys received—" *obtained, of course, from the proper authority, that is from the power or body from which the mandate or trust emanated, or for whose account the funds were received,* was thus imposed as a condition precedent to eligibility in this State. Hence, it could not be contemplated that the discharge of a school board treasurer could be given by the State Auditor any more than it could be contemplated that such a discharge could be obtained from the school board of a neighboring parish. It follows, on the contrary, as a corollary from the main proposition, that a discharge for State mcney must emanate from the State Auditor; * * * that a discharge for parish funds must be issued by the police jury in conformity with law; that a discharge for school money *must be granted by the school board of the parish* in accordance with the powers conferred upon it by law. And that the discharge in either case must appear of record in the proper

·office, must be of easy access to the public, and susceptible of being produced without delay when needed. It was intended that the candidate whose ineligibility on that score would be questioned * * * could at once refer to his discharge and quickly dispel all doubts as to his status." State ex rel. Howell vs. Echeverria, 33 An. 709.

It may be, and doubtless is, true that a school treasurer must make *all* settlements with the school board and procure from them a discharge; and, also, that *such* discharge must possess all the ingredients mentioned in that opinion; yet, in our opinion, the respondent's case remains undisturbed. His receipts for moneys collected are formal and sufficient. They were given to him by the authority authorized to issue them, and they were issued in conformity to law. They appear of record in the parish archives and same are of easy access to the public, and are susceptible of being produced without delay. In this state of the record and the law it appears to us perfectly clear that the complaint of relator is wholly groundless, and that respondent's ineligibility is not established.

Judgment affirmed.