(114 So. 721) .

No. 28723.

## STATE v. MURRAY.

Oct. 31, 1927. Rehearing Denied Nov. 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Witnesses** ⬅═394—Testimony that accomplice implicating defendant did not tell substantially different story on witness stand, held admissible to rebut defendant's testimony.

In burglary trial, testimony of sheriff and another witness that accomplice, who implicated defendant in latter's presence, did not hang his head nor tell substantially different story on witness stand, as defendant testified, *held* admissible in rebuttal of latter's testimony.

2. **Criminal law** ⬅═855(3)—Sheriff and deputies should not let weight of their positions affect jury's judgment.

While it is duty of sheriff and his deputies to have keen interest in administration of justice, detect crimes, bring violators of law to trial, and procure evidence necessary to convict them by every lawful means, they should not let weight of their official positions disturb or affect impartial judgment of jury.

3. **Criminal law** ⬅═855(7)—Deputy sheriff's statements to juror urging conviction and another deputy's expression of desire to talk with another juror held to require new trial, though ten jurors voted to convict.

Deputy sheriff's statements to juror, "I want you to do what you can to convict this man," and that people would like to have both defendant and one testifying against him "stuck," and another such deputy's statement to another juror that he wanted to talk to him, *held* to require new trial, though nine jurors testified that deputies did not attempt to influence their judgment and at least ten voted for conviction, for which concurrence of only nine was required; defendant being entitled to trial by twelve impartial and unprejudiced jurors.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Henry Murray was convicted of burglary, and he appeals. Verdict and sentence annulled, and case remanded.

T. A. Carter, of Alexandria, for appellant.

Percy Saint, Atty. Gen., Cleveland Dear, Dist. Atty., of Alexandria (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

O'NIELL, C. J. The appellant was convicted of the crime of burglary and sentenced to imprisonment in the penitentiary.

[1] The record contains four bills of exception, three of which relate to the same subject-matter. It appears that a boy named Elliott was also arrested and charged with the crime, and when he was brought to the jail, in presence of the defendant Murray, he admitted having taken part in the crime, and implicated Murray. Murray alone was brought to trial, and Elliott testified against him. When Murray took the stand as a witness he said that Elliott, in his confession in the jail, talked reluctantly and hung his head, and that his statement on the witness stand was different from that which he had made in the jail. When the district attorney was offering evidence in rebuttal, the sheriff and another witness who had heard Elliott's statement in the jail and his testimony on the trial testified that Elliott, in his statement in the jail, did not hang his head, but looked Murray in the face while telling his story, and that the story which he told then was substantially the same as that which he related on the witness stand. The defendant's attorney objected to this evidence on the ground that it was not in rebuttal of anything testified to by Murray. The judge, in his per curiam, on each of the three bills of exception, says that the testimony of the sheriff and of the other state witness was in rebuttal of what Murray had testified to; and the note of evidence taken during the trial shows that the judge's statement is correct. There is, therefore, no merit in the three bills of exception.

[2, 3] The fourth bill was reserved to the overruling of a motion for a new trial. It

was charged in the motion that the sheriff's deputies had tampered with the jurors during the trial and influenced and persuaded them to convict the defendant. The evidence taken on the trial of the motion shows that two of the deputies did approach at least two of the jurors with a desire to talk to them about the case and to interfere with the administration of justice. One of the jurors testified that, during a recess of the court, when the case was on trial, one of the deputies, in a restaurant, asked him what he thought about the Murray case, and that he, the juror, replied that he thought they were trying the wrong man—meaning that Elliott was the guilty party; and that, on the next day, during the trial, the same deputy stopped him on the street in front of the court house, and said to him: "I want you to do what you can to convict this man; we want to get shed (meaning rid) of him." The deputy, testifying on the trial of the motion, gave his version of the incident in the restaurant, thus: The juror began the conversation by asking the deputy: "What is this other boy [Elliott] charged with?" The deputy looked around the room, and then said to the juror: "You can't talk in here." They then walked out of the restaurant, and the deputy said to the juror: "They have him charged with the same thing that the one on trial is." The juror then asked why they did not try the other boy, and the deputy replied: "Its the sentiment of the people that they are both guilty and they would like to have them stuck." Thereafter, in his testimony, the deputy said that he told the juror that it was the sentiment of the people that both Murray and Elliott were guilty and that he, the deputy, would like to have them stuck. The deputy testified that he was not certain whether he had talked to the juror about the case again the next day on the street, but he virtually admitted that he had so spoken to him again; and the fact that he did so is proven by another witness, a woman whose brother was to be tried that week and who was therefore interested in and observant of the activities of the deputy sheriff. The juror voted for an acquittal; and in his discussion of the case with the other jurors, in the jury room, after the case was submitted, he told him, in criticism of their voting for a conviction, that a deputy sheriff must have talked to them about the case.

The other juror who was approached, by another deputy sheriff, refused to discuss the case with him. The deputy went to a boarding house where the jurors were staying, and said to the juror: "Come out this way; I want to talk to you." The juror replied: "Now, listen; if you want to talk to me about this case, I don't want to talk to you at all." The deputy replied: "I just want to say—" and the juror walked away, and the deputy also immediately went away. The significant feature of the episode is that the juror knew, without being told, that the deputy wanted to talk to him about the case that was then on trial; and the more significant fact is that the deputy was not at all surprised that the juror knew what he, the deputy, wanted to talk about. That juror testified on the trial of the motion for a new trial that he had voted for an acquittal, and that the clerk failed to call his name in the polling of the jury. The record of the polling of the jury shows that only one juror voted for an acquittal; and a deputy sheriff testified that that one was the other juror whom we have referred to.

Nine other members of the jury testified on the trial of the motion for a new trial, and each declared that he was not talked to about the case, before or during the trial, by the sheriff or any deputy sheriff. Each of the nine jurors had voted to convict the defendant. A deputy sheriff testified that the juror who did not appear as a witness on the trial

of the motion for a new trial was sick at the boarding house.

The record leaves considerable doubt as to whether the conduct of the two deputies in this case deprived the defendant of that fair and impartial trial which the Constitution guarantees to every man accused of crime. It is conceded by the district attorney, in his brief, that it was very wrong for the deputies to discuss the case with the jurors, or to attempt to discuss it with them, in a way that was apt—and intended—to influence them in arriving at a verdict. It is a duty—the faithful performance of which ought to be highly commended—for the sheriff and his deputies to have a keen interest in the administration of public justice, to detect crimes, to bring the violators of the law to trial, and to procure by every lawful means the evidence necessary to convict them. But a sheriff or deputy sheriff must not let the weight of his official position, with its influence and power, disturb or affect the impartial judgment of a jury in any case. In State v. Dallas, 35 La. Ann. 899, and again in State v. Langford, 45 La. Ann. 177, 14 So. 181, 40 Am. St. Rep. 277, our predecessors set aside a verdict because a deputy sheriff had interfered in the deliberations of the jury, in a way not so bold or flagrant as in this case. In the Dallas Case the court said:

"The proceedings will be vitiated if a deputy sheriff, having charge of the jury, makes in their hearing statements of a damaging character to the accused, and if in answer to a question of a juror, he informs him that the accused had been previously sentenced to the penitentiary for the commission of a heinous offense."

In Langford's Case, the verdict was set aside because a deputy sheriff said to one of the jurors, who was standing out for acquittal, "Why, John, plain case."

It is argued that no harm was done by the deputies in this case, because nine of the jurors testified that the deputies did not attempt to influence their judgment, and because at least ten, and more likely eleven, of the jurors voted to convict the defendant, when the concurrence of only nine was enough to convict. There is some logic in the argument, but it overlooks the fact that, notwithstanding the defendant could be legally convicted by the unfavorable vote of nine as well as of twelve jurors, he was entitled to be tried by twelve—not nine or ten or eleven, but twelve—impartial and unprejudiced jurors. Besides, we are not sure that the "pernicious activities" of the deputies sheriff in this case had no effect upon the deliberations of the jury. It would establish a bad precedent if we should put our approval upon such proceedings by affirming the verdict. No such extensive harm can result from our granting a new trial.

The verdict and sentence are annulled, and the case is ordered remanded to the district court for a new trial.