**Alphonse V. CASTALDI, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 66 C 45(2).**

United States District Court
E. D. Missouri, E. D.
March 9, 1966.

Alphonse V. Castaldi, per se.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for respondent.

MEREDITH, District Judge.

This matter is pending on a motion to vacate judgment and sentence under 28 U.S.C. § 2255. The background of the prior litigation is fully set out in the opinion of the Court of Appeals, Drummond v. United States, 350 F.2d 983 (8 Cir. 1965). Briefly, a three-count indictment was returned against petitioner and his co-defendant, William C. Drummond. Count One charged both with a violation of 18 U.S.C. §§ 471 and 472, counterfeiting a $20 federal reserve note. Count Two charged co-defendant Drummond alone with a violation of 18 U.S.C. § 474, making a plate in the likeness of the note. Count Three charged both with a violation of 18 U.S.C. § 371, conspiracy to commit a counterfeit offense. Petitioner and Drummond were tried together before a jury. Drummond was found guilty on all three counts. Petitioner was found guilty on Count Three and acquitted on Count One. A five-year sentence, which he is presently serving, was imposed.

As grounds for this motion, petitioner alleges he was deprived of a fair and impartial trial because of the denial of his motion for a separate trial and because the jury convicted him on the basis of an improper standard, finding him guilty of "association" instead of conspiracy. In support of these allegations, petitioner states that after the trial several of the jurors were asked by the assistant United States attorney why they found Castaldi guilty only on Count Three and not on Count One, to which they responded, in substance: "We were going to find Castaldi not guilty of conspiracy also, but because of his association with Drummond and Long we felt he may have had some knowledge of the crime." Accordingly, petitioner requests a copy of the transcript of trial and a hearing at which the twelve jurors will be called to testify.

■ 28 U.S.C. § 2255 provides a remedy to a federal prisoner claiming the right to be released because the sentence was imposed in violation of the Constitution or laws of the United States, etc., and requires that a hearing be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief * * *." However, a hearing is not required where the motion raises a question of law only or where the motion fails to raise a substantial issue as to the fundamental fairness of the prior trial. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

■ Petitioner's allegations are interrelated. Rules 8 and 14, Federal Rules of Criminal Procedure, clearly sanction the joint trial here conducted unless it can be shown that clear prejudice resulted from such a joinder. A great amount of discretion is vested in the trial judge regarding joinder and, if the matter is tested on appeal, the trial judge's determination will not be rejected absent a clear abuse of that discretion. United States v. Miller, 340 F. 2d 421 (4 Cir. 1965); Slocum v. United States, 325 F.2d 465 (8 Cir. 1963). The petitioner must meet the burden of showing that such prejudice resulted as to deprive him of a fundamentally fair trial. United States v. Hanlin, 29 F.R.D. 481 (W.D.Mo.1962). Petitioner seeks to show clear prejudice by reference to the improper basis upon which the jury convicted him; and he also asserts that such jury misconduct, standing alone, constitutes such fundamental unfairness as to justify collateral relief under 28 U.S.C. § 2255. In sum, petitioner's motion turns upon his effort to impeach the jury verdict. We must determine if this is a permissible type of collateral attack.

■ It cannot be disputed that petitioner possesses a constitutional right to be tried by a "fair and impartial jury". But, we are not here concerned with the selection of the jury nor with the correctness and sufficiency of the instructions given to the jury. Here we are asked to delve into the deliberations of the jury in the jury room. It has been consistently recognized that a balance of priorities must be established with regard to jury inquisitions because it is clear that such inquisitions are not conducive to fair trials. As was said in McDonald v. Pless, 238 U.S. 264, 267, 35 S. Ct. 783, 784, 59 L.Ed. 1300 (1915):

"* * * * let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference."

The rule of fundamental fairness inhering in the due process protections of the Constitution requires that we weigh the value of questioning each juror as to the mental processes behind his determination against the value of preserving the sanctity and secrecy of jury deliberations. As was said in State v. LaFera, 42 N.J. 97, 199 A.2d 630, 636 (1964):

"It may appear odd to recognize a ground for the invalidation of a verdict while denying a litigant a chance to find out whether such an event perchance did occur. The fate of a defendant is thus made to depend upon sheer luck, that the wrongful event somehow comes to light. The weight of the criticism is appreciated, but when contending values clash in their demands, a balance must be struck, and the balance struck is not shown to be a poor one because in some unknowable cases there may be an injustice. * * * Against this must

**684**

be weighed the substantial interest of the public and of defendants as a group, in the full and free debate in the jury room."

Initially, a jury verdict has presumptive validity and will not be set aside except upon a showing of essential unfairness of constitutional dimension. United States v. Provenzano, 240 F.Supp. 393 (D.N.J.1965). Beyond this, strict limitations are placed on the scope of impeaching verdicts and the manner in which they may be impeached. The rule enunciated in the McDonald case, supra, still represents the great weight of authority as to impeachment by the testimony or affidavits of the jurors. Even the most liberal courts will not allow jurors to impeach their verdict on the basis of matters which inhere in the verdict itself, e. g., the ground of their verdict, a misunderstanding of the instructions or the law or a misapprehension of the evidence. Thus, in State v. Kociolek, 20 N.J. 92, 118 A.2d 812, 58 A.L.R.2d 545, 552 (1955), the Court said:

"The better reasoned decisions support the exclusion of jurors' testimony as to their mental processes, not upon the discredited basis of the policies against self-stultification and avoidance of jury tampering, perjury or other fraudulent practices, but upon the sounder ground that, being personal to each juror, the working of the mind of any of them cannot be subjected to the test of other testimony, and therefore that such testimony should not be received to overthrow the verdict to which all assented."

The factual allegations presented in this motion clearly create the type of situation to which the Kociolek court referred. The alleged statement made by the jurors is extremely ambiguous, to say the least. The statement is clearly reconcilable with a verdict of guilty on the conspiracy count; a discrepancy arises only if the "associations" to which the jurors referred are assumed to be associations in some activity other than the criminal activity out of which the indictments grew.

Numerous cases, in addition to those already cited, rule that the pursuit and protection of constitutional rights are not well served by diversion into this uncertain and fruitless field. See Butler v. United States, 317 F.2d 249, 262 (8 Cir. 1963); Rees v. Peyton, 341 F.2d 859 (4 Cir. 1965); Bates v. Dickson, 226 F. Supp. 983 (N.D.Calif.1964); United States v. Furlong, 194 F.2d 1 (7 Cir. 1952), cert. den. 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352. Accordingly, we find that petitioner's motion fails to raise any substantial issue as to the fundamental fairness of his trial and an order will be entered denying his motion.