## PARKER *v.* GLADDEN, WARDEN.

No. 81.   Argued November 9, 1966.—Decided December 12, 1966.

*John H. Schafer* argued the cause and filed a brief for petitioner.

*David H. Blunt,* Assistant Attorney General of Oregon, argued the cause for respondent.   With him on the brief was *Robert Y. Thornton,* Attorney General.

PER CURIAM.

Petitioner, after his conviction for second degree murder, 235 Ore. 366, 384 P. 2d 986, filed a petition for post-conviction relief, Ore. Rev. Stat. § 138.550.   At a hearing on the petition the trial court found that a court bailiff assigned to shepherd the sequestered jury, which sat for eight days, stated to one of the jurors in the presence of others while the jury was out walking on a public sidewalk: "Oh that wicked fellow [petitioner], he is guilty"; [1] and on another occasion said to another

---

[1] The statement was made to alternate juror Mrs. Gattman and was overheard by juror Mrs. Inwards.

juror under similar circumstances, "If there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it." [2]  Both statements were overheard by at least one regular juror or an alternate.  The trial court found "that the unauthorized communication was prejudicial and that such conduct materially affected the rights of the [petitioner]."  The Supreme Court of Oregon reversed, finding that "the bailiff's misconduct did not deprive [petitioner] of a constitutionally correct trial." 245 Ore. —, 407 P. 2d 246.  We granted certiorari, 384 U. S. 904.  The federal question decided by Oregon's highest court is, of course, subject to final determination in this Court and we have concluded that the judgment must be reversed.

We believe that the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment.  It guarantees that "the accused shall enjoy the right to a . . . trial, by an impartial jury . . . [and] be confronted with the witnesses against him. . . ."  As we said in *Turner* v. *Louisiana,* 379 U. S. 466, 472–473 (1965), "the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."  Here there is dispute neither as to what the bailiff, an officer of the State, said nor that when he said it he was not subjected to confrontation, cross-examination or other safeguards guaranteed to the petitioner.  Rather, his expressions were "private talk," tending to reach the jury by "outside influence."  *Patterson* v. *Colorado,* 205 U. S. 454, 462 (1907).  We have followed the "undeviating rule," *Sheppard* v. *Maxwell,* 384 U. S. 333, 351 (1966),

---

[2] The statement was made to an unidentified juror and overheard by juror Mrs. Drake.

that the rights of confrontation and cross-examination are among the fundamental requirements of a constitutionally fair trial. *Kirby* v. *United States,* 174 U. S. 47, 55, 56 (1899); *In re Oliver,* 333 U. S. 257, 273 (1948); *Pointer* v. *Texas,* 380 U. S. 400 (1965).

The State suggests that no prejudice was shown and that no harm could have resulted because 10 members of the jury testified that they had not heard the bailiff's statements and that Oregon law permits a verdict of guilty by 10 affirmative votes. This overlooks the fact that the official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury which he had been shepherding for eight days and nights. Moreover, the jurors deliberated for 26 hours, indicating a difference among them as to the guilt of petitioner. Finally, one [3] of the jurors testified that she *was* prejudiced by the statements, which supports the trial court's finding "that the unauthorized communication was prejudicial and that such conduct materially affected the rights of the defendant." This finding was not upset by Oregon's highest court. Aside from this, we believe that the unauthorized conduct of the bailiff "involves such a probability that prejudice will result that it is deemed inherently lacking in due process," *Estes* v. *Texas,* 381 U. S. 532, 542–543 (1965). As we said in *Turner* v. *Louisiana, supra,* "it would be blinking reality not to recognize the extreme prejudice inherent" in such statements that reached at least three members of the jury and one alternate member. *Id.,* at 473. The State says that 10 of the jurors testified that they had not heard the statements of the bailiff. This, however, ignores the testimony that one of the statements was made to an unidentified juror, which, includ-

---

[3] Mrs. Inwards when recalled to the stand testified in response to a question by the court that "all in all it must have influenced me. I didn't realize it at the time."

ing Mrs. Inwards and Mrs. Drake, makes three. In any event, petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors. See *State* v. *Murray*, 164 La. 883, 888, 114 So. 721, 723.

*Reversed.*

MR. JUSTICE HARLAN, dissenting.

By not setting forth the background of this proceeding the Court has put seriously out of focus the constitutional issue involved in this case.

Parker was convicted of second degree murder on May 19, 1961, and sentenced to life imprisonment. On September 7, 1961, he addressed a letter to several jurors protesting his innocence, condemning his attorneys for incompetence, intimating that witnesses were coerced into lying, and chiding the jurors for being duped into finding him guilty. After affirmance of his conviction by the Supreme Court of Oregon on September 15, 1963—some two years after the jury verdict—Parker again set out to take his case to the jury. He furnished his wife with a tape recording in which he propounded a series of questions designed to uncover possible improprieties in the jury's deliberations. The jury had deliberated a long time and Parker had been told that their discussion was heated. Although unaware of any irregularities he commenced "shooting in the dark." (Tr., p. 16.) Mrs. Parker then acquired a jury list and discovered those jurors who had been most sympathetic to her husband.[1] She invited two regular jurors and an alternate to her home to listen to the recording and discuss the case. An attorney was then retained to prepare affidavits detailing the allegations before us and to institute this post-

---

[1] The record shows that Mrs. Parker first called juror number one, Mrs. Inwards, and upon finding her sympathetic obtained from her the names of those who had held out longest. Mrs. Inwards also informed Mrs. Parker that an alternate juror, Mrs. Gattman, was sympathetic to Parker's cause.

conviction proceeding. The statements before this Court were found to have been made by this apparently Elizabethan-tongued bailiff, but, contrary to this Court's assertion, the trial court found that these statements were only prejudicial in nature and not that they had a prejudicial effect.[2] The Oregon Supreme Court did not find the trial proceedings fundamentally unfair.

This Court finds the bailiff's remarks to be in violation of the Sixth Amendment's confrontation requirement. Although I believe that "a right of confrontation is 'implicit in the concept of ordered liberty,'" *Pointer* v. *Texas*, 380 U. S. 400, 408 (concurring opinion of HARLAN, J.), I cannot accede to the view that the Sixth Amendment is directly applicable to the States through the Fourteenth. As to the confrontation problem here asserted, I know of no case in which this Court has held that jurors must have been absolutely insulated from all expressions of opinion on the merits of the case or the judicial process at the risk of declaration of a new trial. *Irvin* v. *Dowd*, 366 U. S. 717. Even where this Court has acted in its supervisory capacity it has refused to

---

[2] The trial court purported to follow the State Supreme Court's decision in *State* v. *Kristich*, 226 Ore. 240, 359 P. 2d 1106, which held that where a bailiff had communicated with a jury on a point of law prejudice would be presumed. Thus the trial court said that "if the matters alleged in plaintiff's petition had been called to the Court's attention, the Court, on its own motion, would have granted the defendant a new trial," and held that Parker deserved a new trial because the communication was of a prejudicial nature. The Oregon Supreme Court reversed because it held that the trial court erroneously applied the new-trial standard to a post-conviction proceeding where only error of constitutional magnitude would serve to overthrow the verdict. The Supreme Court made no specific finding on prejudice but in distinguishing *Turner* v. *Louisiana*, 379 U. S. 466, noted a "difference in degree of the out-of-courtroom influence . . . so great as to lead us to the conclusion that the bailiff's misconduct did not deprive defendant of a constitutionally correct trial." 245 Ore. ——, ——, 407 P. 2d 246, 249.

hold that jury contact with outside information is always a cause for overthrowing a verdict, wisely preferring to allow "each case . . . [to] turn on its special facts." *Marshall* v. *United States,* 360 U. S. 310, 312. The Court notes that these remarks were made by a state officer, but does not explain why the bailiff's official capacity would in this instance make him any more a "witness" than any other person able to communicate with the jury. Thus, though I believe unintentionally, the Court's opinion leaves open the possibility of automatically requiring a mistrial on constitutional grounds whenever any juror is exposed to any potentially prejudicial expression of opinion.

Considering this case, as I would, under the doctrine of fundamental fairness implicit in the Due Process Clause of the Fourteenth Amendment, I think a different result follows. Much reliance has been placed upon *Turner* v. *Louisiana,* 379 U. S. 466. But in *Turner* we faced a situation in which the trial court allowed two deputy sheriffs who were key witnesses to be placed in "continuous and intimate association" with the jury, and it would have been "blinking reality not to recognize the extreme prejudice inherent in this" situation. 379 U. S., at 473. There too we faced "a procedure employed by the State" involving "such a probability that prejudice will result" that we deemed it "inherently lacking in due process." *Estes* v. *Texas,* 381 U. S. 532, 542–543. Here no procedure adopted by the State is to be faulted and it seems clear to me that the rule of *Stroble* v. *California,* 343 U. S. 181, and *Irvin* v. *Dowd, supra,* should apply and a substantial showing of prejudice in fact must be made before a due process violation can be found.

On this basis the occurrences before us seem inconsequential to me in light of the eight-day trial and twenty-six-hour jury deliberation. And my feeling is confirmed by the extremely trivial evidence of prejudice amounting to no more than an assertion by one obviously highly

emotional and "guilt-ridden" juror that she might have been influenced without realizing it.[3] "[I]t is an impossible standard to require that tribunal [the jury] to be a laboratory, completely sterilized and freed from any external factors." *Rideau* v. *Louisiana,* 373 U. S. 723, 733 (CLARK, J., dissenting).

The potentialities of today's decision may go far beyond what, I am sure, the Court intends. Certainly the Court does not wish to encourage convicted felons to "intimidate, beset and harass," *Stein* v. *New York,* 346 U. S. 156, 178, a discharged jury in an effort to establish possible grounds for a new trial. Our courts have always been alert to protect the sanctity of the jury process. *McDonald* v. *Pless,* 238 U. S. 264; see *Castaldi* v. *United States,* 251 F. Supp. 681. But in allowing Parker to overturn his conviction on the basis of what are no more than inconsequential incidents in an otherwise constitutionally flawless proceeding, the Court encourages others to follow his example in pursuing the jury and may be thought by some to commit federal courts in habeas corpus proceedings to interrogate the jury upon the mere allegation that a prejudicial remark has reached the ears of one of its members. *Remmer* v. *United States,* 347 U. S. 227. To any such result I cannot subscribe.

I think the Oregon Supreme Court correctly assessed the constitutional issue before us, and I would affirm its judgment.

---

[3] Mrs. Inwards, who on recall testified that she must have been unconsciously influenced, denied any influence when first examined. In her further testimony she admitted that she was extremely upset by the verdict and would do anything short of committing perjury to overturn it. She stated, however, that although she had gone to the trial judge to discuss the verdict she had never mentioned the bailiff's remarks to him. In specifying that the bailiff's remarks "must" have influenced her she limited herself to declaring that they did so in connection with the pressure put on her by other jurors during the deliberations thus stating that "all in all" she "must" have been influenced.