Argued and submitted April 20, affirmed June 15, reconsideration denied July 29, petition for review denied August 16, 1983 (295 Or 541)

# STATE OF OREGON,
*Respondent,*

*v.*

# DONALD EUGENE DICKSON,
*Appellant.*

## (81-1997-C; CA A25011)

665 P2d 352

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant seeks reversal of his conviction for aggravated murder, arguing that the jury was exposed to evidence that was not admitted at trial and that this evidence affected the jury's verdict. After a thorough examination of the circumstances surrounding the jurors' receipt of the evidence, we agree with the trial court's finding that the evidence did not prejudice defendant and therefore affirm.

In November, 1981, defendant was charged with committing a murder in the course of an attempt to commit first degree robbery. Following a two week trial, the jury returned a unanimous verdict of guilty. After the verdict had been rendered, but prior to entry of judgment, defendant's attorney received information that during the course of the trial one of the jurors had received an anonymous letter containing a clipping from a Klamath Falls newspaper. The article purportedly contained information about a prior trial involving defendant or a crime committed by defendant. Defendant's attorney promptly informed the trial court of this development. The court, defendant's attorney and the district attorney met immediately and agreed to question the jurors, under oath, about the article. The subsequent hearing revealed nothing to indicate that any juror had received a newsclipping from any source, known or anonymous. However, juror MacAdam testified that, during the trial, a deputy sheriff made a statement about defendant's past in the presence of MacAdam and another juror. Although MacAdam could not remember the officer's exact words, the essence of the message was that defendant had "done something like this before." Defendant moved for a new trial, contending that the deputy sheriff's statement constituted a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. The trial court denied the motion after concluding:

"I

"The State's interest in having final judgments was not outweighed by any possible juror misconduct in the present case.

"II

"Any possible juror misconduct or irregularity was not such so as to have prejudiced or affected the final verdict sufficient to warrant a new trial.

.

## "III

## "Defendant's right to confrontation was not violated in this case."[1]

---

[1] The trial court reached these conclusions on the basis of these findings of fact:

"* * * * *

### "II

"Any juror misconduct or juror irregularity occurred sometime other than [during] deliberations and prior to deliberations by two to six days.

### "III

"Any juror misconduct or irregularity concerned only two jurors, Renee Cooper and Scott MacAdam.

### "IV

"A statement was made by Deputy Palmer of the Sheriff's Department to Ms. Cooper and Mr. MacAdam while Deputy Palmer was transporting those two jurors to or from the trial in the above entitled case.

### "V

"Deputy Palmer said something to the effect that 'Mr. Dickson has done something like this before.'

### "VI

"That neither Renee Cooper nor Scott MacAdam discussed the statement by Deputy Palmer with any other jurors either before or during deliberations.

### "VII

"If any discussion occurred with any of the other jurors it was after deliberations were concluded and after the jury had reached its verdict and been polled by the Court and discharged from the case.

### "VIII

"The Defendant Mr. Dickson's past was extensively discussed during the trial of the above entitled case without objection from the Defendant and in great detail, including the fact that Defendant was on temporary leave from the Oregon State Penitentiary.

### "IX

"That the statement made by Deputy Palmer to jurors Cooper and MacAdam did not prejudice or affect their verdict in the case.

### "X

"Beyond a reasonable doubt the statement by Deputy Palmer did not violate Defendant's right to confrontation.

"* * * * *"

In his oral ruling, the trial judge further explained the reasons supporting his conclusions. First, he elaborated on the significance of his finding that the sheriff's

This appeal followed.

■ It is apparent from the conclusions quoted above that the trial court treated this case as though it raised two distinct issues: juror misconduct and a violation of the Confrontation Clause. We think the case raises only the latter question. In *State v. Gardner,* 230 Or 569, 371 P2d 558 (1962), the Supreme Court stated the principle to be used in deciding "juror misconduct" cases:

> "* * * [T]he verdict will stand unless the evidence clearly establishes that the misconduct constitutes a serious violation of the juror's duty and deprives complainant of a fair trial. * * *" 230 Or at 575.

In this case, there is no evidence that the jurors who heard the deputy's statement utilized the information in any way that could be characterized as a violation of their duties. We therefore confine our attention to the constitutional issue.

Defendant asserts that the deputy's statement violated the Sixth Amendment Confrontation Clause, made applicable to the states through the Due Process Clause of the Fourteenth Amendment.[2] *Pointer v. Texas,* 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965). The constitutional issue requires a two step analysis: Was defendant's right to confrontation violated? If so, was the error prejudical to defendant? As noted above, the trial court concluded that "defendant's right to confrontation was not violated in this case." We disagree.

■ In *Parker v. Gladden,* 385 US 363, 87 S Ct 468, 17 L Ed 2d 420 (1966), a bailiff in charge of a sequestered jury remarked to several jurors, "Oh that wicked fellow [defendant], he is guilty," and "If there is anything wrong [in finding defendant

statement was not made during the jury deliberations. According to the trial judge, the deliberation period is the "critical part of the trial" when evidence outside the record would be "most damaging." Second, he noted that he had instructed the jury to make its decision solely on the evidence introduced at the trial and to consider prior convictions only for their bearing on defendant's credibility as a witness. Third, he emphasized that Cooper and MacAdam did not discuss Palmer's statement with the other jurors. From this, the court inferred that Cooper and MacAdam had understood the jury instructions and had attempted conscientiously to follow them. He also inferred from the absence of discussion that the statement had not made much of an impression on Cooper or MacAdam.

[2] The Sixth Amendment guarantees that "the accused shall enjoy the right to a * * * trial, by an impartial jury * * * [and] be confronted with the witnesses against him * * *."

guilty] the Supreme Court will correct it." The United States Supreme Court found those occurrences to be violations of the Confrontation Clause. Although the deputy's statement in the present case is less overtly prejudical than the *Parker* bailiff's statement, there is little qualitative difference between the two remarks; if the former violates the Sixth Amendment, then so does the latter. Further, defendant in this case was deprived of a number of defensive tools that the Confrontation Clause is intended to secure, *e.g.,* the opportunities to cross-examine the deputy, to introduce evidence to rebut his statement, to object to the admission of the statement and to argue the significance of the evidence to the jury. *United States v. Bagnariol,* 665 F2d 877, 884 n 3 (9th Cir 1981); *see Gibson v. Clanon,* 633 F2d 851, 854 (9th Cir 1980). We conclude that defendant was deprived of his right to be confronted with a witness against him.

■    We must therefore decide whether this constitutional violation necessitates a reversal of defendant's conviction. *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 828, 17 L Ed 2d 705 (1967), states the "harmless error rule" to be applied in cases involving federal constitutional errors: The error must be harmless beyond a reasonable doubt. *See also United States v. Vasquez,* 597 F2d 192 (9th Cir 1979); *Gibson v. Clanon, supra,* 633 F2d at 853.

■■    The initial determination is to be made by the trial judge. *Carson v. Brauer,* 234 Or 333, 342, 382 P2d 79 (1963); *United States v. Bagnariol, supra,* 665 F2d at 884. In this case, the trial court conducted a thorough hearing to determine the nature of any evidence brought to the attention of the jurors, the extent to which the jurors discussed such evidence and when such discussion occurred. On the basis of the information revealed at the hearing, the court made findings and conclusions that (1) defendant's right to confrontation was not violated beyond a reasonable doubt and (2) "the statement made by Deputy Palmer to jurors Cooper and MacAdam did not prejudice or affect their verdict in this case." Taken together, these findings and conclusions constitute a determination, beyond a reasonable doubt, that the jury's verdict was not affected by the deputy's out-of-court statement. We agree.

In addition to the findings noted above, the trial court determined that only two jurors heard Palmer's remark, only

one of those two jurors remembered the remark clearly, and neither juror discussed the remark with any of the other jurors at any time prior to the announcement of the verdict. Each of these findings is amply supported by the record of the hearing, and together they indicate that the deputy's statement *could* have affected the votes of only two jurors.[3] The court's finding that the statement did not *in fact* influence either juror is also amply supported by their testimony. Cooper's recollection of the incident was extremely vague and equivocal, demonstrating beyond doubt that, if she heard Palmer's statement at all, its effect on her was negligible. Moreover, her testimony establishes that she, along with the rest of the jurors, took the court's instructions[4] seriously and did her best to decide the case only on the evidence presented at trial.[5]

---

[3] We recognize that, if this worst case scenario had come to pass, it would have compelled the trial court to grant defendant's motion for new trial. *Parker v. Gladden, supra*, 385 US at 365-66 (holding that a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors.")

[4] *See* n 1, *supra*.

[5] At one point during the post-trial hearing, the following exchange took place:

"Q: [By the District Attorney] * * * Was there ever a discussion in the jury room by any of the jurors about * * * information [concerning defendant's past] coming from a newspaper article?

"A. No. In fact, I know that for a fact, because one man started to say something and everyone said we can't judge him by his prior or anything. We have to judge him by what's happening now * * *.

"* * * * *

"* * * [T]his person [a juror] started to say something to the effect of well, lets look at his past or something like that, and immediately Bob jumped up, our foreman —

"* * * * *

"* * * He says, 'We're not to judge him on his past, anything he's done before, we are to judge him on what is now,' and Rose, the woman sitting next to me, said the same thing.

"Q: He [the juror] didn't say what he was referring to?

"A. He didn't get to."

Later in the hearing, Cooper stated:

"* * * * *

"A. * * * I told myself at the beginning of the trial whatever I heard [from sources outside the courtroom] I was not going to listen to it anyway, and that's what I did[;] until the very last day I did not have a decision. * * *

"* * * * *

"* * * I really took this [jury duty] as a—really seriously about giving this guy [defendant] every chance I could."

Likewise, MacAdam's testimony demonstrates that he remained unprejudiced by the comment. Although the the deputy sheriff's statement made a distinct impression on him, he, too, paid careful attention to the jury instructions and abided by them.[6] Thus, the jury instructions, together with the evidence that Cooper and MacAdam followed them, weigh strongly in favor of a conclusion that defendant was not prejudiced by the extrinsic evidence. *See United States v. Bagnariol, supra,* 665 F2d at 889; *United States v. Bagley,* 641 F2d 1235, 1241 (9th Cir 1981).

■　　　Finally, the trial court's unequivocal finding that defendant was not prejudiced is entitled to great weight. *United States v. Bagnariol, supra,* 665 F2d at 885; *Gibson v.*

---

[6] MacAdam's description of the circumstances surrounding the deputy sheriff's remarks included the following:

"* * * There was one comment that came from one of the Sheriff officers who brought us in that I remember at the time when they made it, and * * * I was surprised that it was made because *it seemed like it shouldn't have been said,* and it was something to the point of that Mr. Dickson had done something like this before in Klamath Falls or something like that * * * Renee [Cooper] was in the car and * * * I think Renee just looked at me in kind of shock that * * * the Sheriff officer would say that, because *it was something that didn't seem like it should be said.*

"* * * * *

"I think that day as we got out of the court Renee looked at me said something like she was really surprised that he [the sheriff] had talked about Dickson and the trial, because he knew we were on the jury and I responded basically the same way, 'Yes, really surprises me too.' Other than that I don't remember myself anyone saying anything about it * * *." (Emphasis supplied.)

Then, when the court questioned MacAdam about other potential instances of jury misconduct, he said:

"* * *[S]everal different times in the jury room or at lunch somebody would say one sentence like "The radio came on last night and I heard a 30-second blurb on it [the trial]' or that — and *that registered because theoretically there was to be none of that going on.* Practically it's kind of hard to control all the time and it registered on that level. There was no discussion. I don't recall in the jury room before deliberations any conversation going on about the case. I recall different people at different times and saying 5 words, one sentence and stopping.

"* * * * *

"The comment about the newspaper wasn't 'I read a newspaper and this is what it said.' It was, 'I read a newspaper last night,' and my reaction was basically one of well, at that point file it away as one more thing out of six or seven little things that people shouldn't be saying or hearing or seeing or whatever." (Emphasis supplied.)

*Clanon, supra,* 633 F2d at 855. We find much in the record to support the trial court's determination and nothing that militates against it. We are convinced beyond a reasonable doubt that the violation of defendant's Sixth Amendment right to confrontation had no prejudicial effect on the jury's verdict.

Our conclusion in this case should not in any way detract from the seriousness of the constitutional violation. Had the trial court been less precise in its instructions or less diligent in its investigation into potential jury prejudice, or had Cooper and MacAdam been less conscientious in following the court's instructions, the deputy's statement would likely have required a new trial.

Affirmed.