PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 11, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-14437
Non-Argument Calendar

_____

D.C. Docket Nos. 99-10034-CV-JLK,
89-10040-CR-JLK

JUAN VINCENTE CADERNO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(July 11, 2001)**

Before BIRCH, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

This appeal from the denial of a 28 U.S.C. § 2255 motion presents two first-impression issues for our circuit. We must decide whether defense counsel's failure to move for a new trial based on a court security officer ("CSO") or Deputy United States Marshal's ("Marshal") comments to a juror that the defendants were "pigs" was a denial of the Sixth Amendment right to effective assistance of counsel during trial and whether a defendant's inability to pay his counsel the full retainer fee caused the counsel not to represent the defendant completely because of the counsel's financial interest. The district judge determined that the convicted defendant was not entitled to habeas corpus relief on either ground. We AFFIRM.

## I. BACKGROUND

Petitioner-appellant, Juan Vincente Caderno, was convicted for his participation in a cocaine distribution conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, and 963.[1] Before sentencing, Caderno and four of his codefendants filed pro se letters alleging that, during a break in the jury deliberations, "spectators, relatives, lawyers and defendants" had observed a

---

[1] The description of this cocaine distribution conspiracy and the proceedings in district court are found in our opinion from the direct appeal in which we affirmed the convictions and sentences of the eight codefendants. United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997).

2

female juror engage in a conversation with a CSO or Marshal on two occasions.[2] Exh. 1-266, attached letters. Caderno and his codefendants asserted that the CSO or Marshal told the juror that the defendants were "pigs" and that two defense attorneys advised the presiding judge of the conversations. They acknowledge that the judge reprimanded the juror and the CSO or Marshal and that he ordered counsel to respond to the letters. Id.

Caderno's counsel responded that, immediately upon noticing an apparent conversation between the juror and the CSO, he and other defense counsel notified the trial judge of their observation. Exh. 1-277 at 3. He stated that the district judge inquired about the conversations and instructed the jurors and the United States Marshal's office that no communications were to occur. Caderno's counsel stated that he witnessed the conversation but was unaware of the specific comments allegedly made by the CSO or Marshal to the juror. Id.

Following counsel's responses, the district judge entered an order stating that the defendants' letters did not constitute motions before the court. Exh. 1-285 at 1. The judge noted that, if the defendants wanted their convictions reviewed, they should request review through a procedurally correct motion or appeal. He

---

[2] These alleged conversations occurred on the courthouse terrace provided for members of the jury who are smokers. Exh. 1-277 at 3.

also stated that he was satisfied by his inquiry into the issues raised in the defendants' pro se letters. Id..

Thereafter, Caderno and four of his codefendants filed motions for a new trial based on the alleged contacts between the CSO or Marshal and juror during the jury deliberations. United States v. Calderon, 127 F.3d 1314, 1348-49 (11th Cir. 1997). They asserted that the CSO or Marshal said to one of the jurors, in reference to the defendants, that "[t]hese people are all pigs." Id. at 1349. The district judge denied the motions for a new trial on the grounds that they were untimely under Federal Rule of Criminal Procedure 33. Exh. 1-484 at 2-3. The judge also noted that the alleged incidents were known to the defendants prior to the entry of the jury verdict. Id.

Caderno was sentenced to four concurrent terms of 235 months of imprisonment. He and his codefendants appealed the denial of their motions for a new trial based in part on their assertion that a CSO or Marshal had improper contact with a juror during jury deliberations. Calderon, 127 F.3d at 1349. On direct appeal, we affirmed the district judge's determination that Caderno and his codefendants' motions for a new trial were filed untimely. Id. at 1351-52.

In his § 2255 motion, Caderno reiterates his assertions in district court. He pursues his contention that, during jury deliberations, several of the codefendants'

family members heard a CSO or a Marshal state to an unidentified juror, in reference to the defendants: ""These people are all pigs'" or '"They're all pigs'" and '"They must be like this at home.""" R1-1 at 7, ¶ 9 (quoting Calderon, 127 F.3d at 1349). Caderno states that his attorney and other defense counsel witnessed the exchange or were made aware of it. Id.

In his report, a magistrate judge recommended that Caderno's § 2255 motion be denied. The magistrate judge concluded that Caderno failed to supply any reliable indicia that a CSO or Marshal made any improper comments to one of the jurors and that, if the comments were made, they were addressed by the trial judge either on the record or informally outside the courtroom. R1-17 at 6-7. Thus, the magistrate judge reasoned that a timely motion for new trial probably would not have been granted. Id. at 7. Over Caderno's objections, the district judge affirmed the magistrate's report and denied Caderno's § 2255 motion. Proceeding pro se, Caderno appealed the denial of his § 2255 motion based on two alleged instances of ineffective assistance of counsel: (1) his attorney's failure to move for a new trial because of the CSO or Marshal's improper communication to a juror and (2) his contention that his attorney had a personal financial interest that conflicted with and adversely affected his defense of Caderno because Caderno was unable to pay his counsel the full retainer fee, which prevented his attorney from providing

5

Caderno with a complete defense.[3]

## II. DISCUSSION

A. <u>Failure to Move for New Trial Based on Security Officer's Communications with a Juror</u>

We review <u>de novo</u> a claim of ineffective assistance of counsel, which is a mixed question of law and fact. <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989). The defendant must show that counsel's performance fell below constitutional standards and that his defense was prejudiced as a result. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Ineffective assistance exists if: (1) counsel's performance was objectively unreasonable; and (2) a reasonable probability exists that the outcome would have been different absent the deficiency. <u>Id.</u> at 691, 104 S.Ct. at 2066. There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy. <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Our review of an ineffective-assistance-of-counsel claim is from the perspective of defense counsel, and we consider the facts "as they

---

[3] Because Caderno filed his § 2255 motion after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA governs this appeal. Our review is limited to the issues specified in the certificate of appealability: 1) whether Caderno's counsel was ineffective for failing to raise a timely objection or motion for a new trial based on an alleged conversation between a CSO or Marshal and a juror; and 2) whether counsel had a financial conflict of interest that adversely affected Caderno's defense. R1-25; <u>Jones v. United States</u>, 224 F.3d 1251, 1254 (11th Cir. 2000).

were known to counsel <u>at the time of the representation</u>." <u>United States v. Teague</u>, 953 F.2d 1525, 1535 (11th Cir. 1992).

We have not addressed a § 2255 motion alleging counsel's ineffectiveness for failing to file a motion for a new trial after a security officer's improper contact with a juror. In an appeal from the denial of a defendant's state motion for post-conviction relief, the Supreme Court found that a bailiff's comment to three jurors, "[o]h that wicked fellow [petitioner], he is guilty," deprived the defendant of a trial by a fair and impartial jury. <u>Parker v. Gladden</u>, 385 U.S. 363, 363, 87 S.Ct. 468, 470, 17 L.Ed. 2d 420 (1966) (per curiam) (alteration in original). In reversing the defendant's conviction, the Court noted that, "petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." <u>Id.</u> at 366, 87 S.Ct at 471. On direct appeal in this case, we decided that the district court properly dismissed Caderno's motion for a new trial as untimely, but we did not address his allegation that improper juror contact warranted a new trial. <u>See</u> <u>Calderon</u>, 127 F.3d at 1351-52.

Although Caderno maintained that his counsel observed the CSO or Marshal's having a conversation with a juror in his pro se letter to the court, Caderno never asserted in district court, nor does he assert on appeal, that his counsel knew the substance of the conversation. Additionally, in his response to

7

the trial judge's order, Caderno's counsel stated that he was not able to overhear any conversation which may have occurred between the CSO or Marshal and the juror. Consequently, Caderno has failed to establish that his counsel had any reason to object on the record or to move for a new trial because he has not shown that his counsel knew the allegedly prejudicial nature of the exchange between the CSO or Marshal and the juror when it occurred. It is uncontested that Caderno's counsel, along with codefendants' counsel, immediately brought to the trial judge's attention that a conversation had taken place between the CSO or Marshal and the juror. Therefore, we conclude that Caderno's counsel did not act unreasonably by not objecting on the record to the conversation between the CSO or the Marshal and the juror, since he did not know the substance of it, or by not filing a timely motion for new trial based on that conversation. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; see Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "'when his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible"'" (citation omitted)).

B. Conflict of Interests

Caderno also asserts that his counsel had a financial conflict of interest that adversely affected his defense because Caderno was unable to pay his counsel the

8

full retainer fee.   Caderno contends that this resulted in his counsel's  having "to sit through many days of trial proceedings without being paid fees he could have been earning by working on other defendants' cases."  Appellant's Brief at 33. Therefore, Caderno argues that an actual conflict of interests existed because his counsel's personal financial interest conflicted with his defense of Caderno. Because of his attorney's personal financial concerns, Caderno alleges that his attorney met with him only twice before trial, failed to object to the alleged improper comments made by a CSO or Marshal to a juror, declined to employ an interpreter to assist in communications with Caderno, agreed to cancel a discovery conference, and refused to move the court for a bond hearing pending sentencing.

We review <u>de</u> <u>novo</u> an appellant's contention that his attorney had a conflict of interests and, consequently, provided ineffective assistance.  <u>Mills v. Singletary</u>, 161 F.3d 1273, 1287 (11th Cir. 1998) (per curiam), <u>cert. denied</u>, 528 U.S. 1082, 120 S.Ct. 804, 145 L.Ed.2d 677 (2000).  To succeed on an ineffective-assistance claim based on a conflict of interests, the appellant must show specific instances in the record that demonstrate "that an actual conflict of interest adversely affected his lawyer's performance."  <u>Cuyler v. Sullivan,</u> 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); <u>see</u> <u>United States v. Marrera</u>, 768 F.2d 201, 208 (7th Cir. 1985) (defining "performance" in the conflict-of-interest context as meaning

"any defense counsel decision which can reasonably be expected to affect the ultimate defense whether that decision be made before, during, or after trial"). "The possibility of conflict is insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719. "A speculative or hypothetical conflict . . . does not violate the Constitution," the appellant must demonstrate that his lawyer "'actively represented conflicting interests.'" United States v. Khoury, 901 F.2d 948, 968 (11th Cir.) (quoting Cuyler, 446 U.S. 350, 100 S.Ct. at 1719), modified on other grounds, 910 F.2d 713 (1990) (per curiam).

Caderno asserts that his counsel had a financial conflict of interest based on Caderno's failure to pay fully his counsel's fees, which conflicted with his defense of Caderno. We have not addressed specifically a conflict-of-interests argument based on a contention that counsel was concerned with his own financial interest throughout the trial, which resulted in his not providing the defendant with a full representation. Under the reasoning in Cuyler and Khoury, it is manifest that Caderno must establish that an actual financial conflict existed by showing that his counsel actively represented his own financial interest during Caderno's trial, rather than showing the possibility of an actual financial conflict. See Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719; see also Khoury, 901 F.2d at 968.

In support of his argument that his counsel had a financial conflict of interest,

Caderno filed his counsel's motion to withdraw and three letters written from his attorney to Caderno after his conviction. R1-3 at Attachments F1, G1, H1, I1. These documents, however, fail to show that Caderno's counsel had an actual financial conflict; the letters show only the possibility of such a conflict. For example, Caderno's counsel's motion to withdraw, filed after the conclusion of Caderno's trial, states that, although Caderno never paid him for his services, their differences were unrelated to payment. R1-3 at Attachment F1. Although the letters by Caderno's counsel, sent after the conclusion of Caderno's trial, clearly expressed Caderno's counsel's frustration at not being paid attorney's fees for representing Caderno at trial, the letters do not indicate that Caderno's attorney had an actual financial conflict because of his own financial interest during Caderno's trial. See id. at Attachments G1, H1, I1); see also Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719.

In this court, Caderno supports his argument that his counsel had a actual financial conflict during his trial with his counsel's motion to withdraw and post-trial letters. Because Caderno only speculates that his counsel had an actual financial conflict, he has failed to establish that his counsel's financial interest actually conflicted with his representation of Caderno thereby adversely affecting Caderno's defense. Without a showing of actual conflicting interests, there is no

11

constitutional violation.  See Khoury, 901 F.2d at 968.  "Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client."  United States v. Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998) (quoting United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997).

## III. CONCLUSION

In this appeal from the denial of his § 2255 motion, Caderno argues that his counsel rendered ineffective assistance by failing to move for a new trial upon learning that a CSO or Marshal commented to a juror that the defendants were "pigs."  He also speculates that his attorney had an actual financial conflict of interests because Caderno could not pay his full retainer fee, which adversely affected Caderno's defense.  For the reasons that we have explained, the district judge's denial of  Caderno's § 2255 motion is **AFFIRMED.**