MERRITT, Circuit Judge,
dissenting.
On the primary issue regarding the Fox-Jones ex parte or extra-judicial conversation about “paranoid schizophrenia,” the law is clear, the facts are clear and our Court is clearly mistaken in its view that defense counsel were not “diligent” but were derelict or delinquent in pursuing the issue zealously and intelligently. The fact is that both Fox and Jones told one story about their conversation and its effect at a post-conviction hearing in state court and the opposite story in federal court. And state law prevented the truth from coming out thereafter in state court so that only the federal forum was available to hear the truth. My colleagues have rendered the federal court powerless to do justice so that no court is now available to enforce the Constitution.
On the law, in Parker v. Gladden, a habeas case arising from a state murder, 385 U.S. 363, 364, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), a bailiff, instead of a psychologist, discussed the case ex parte with a juror. The Court outlined the law:
We believe that the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. It guarantees that “the accused shall enjoy the right to a ... trial, by an impartial jury ... [and] be confronted with the witnesses against him....” As we said in Turner v. Louisiana, 379 U.S. 466, 472-473 [85 S.Ct. 546, 13 L.Ed.2d 424] (1965), “the ‘evidence developed’ against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant’s right of confrontation, of cross-examination, and of counsel.”
In Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954), a clear procedure to deal with this kind of ex parte communication is set out to eliminate the danger of jury reliance on extra-judicial evidence:
In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.[1]
*351 These legal principles strictly forbidding ex parte contacts and extra-judicial evidence, like the Fox-Jones telephone conversation, are also strictly enforced in trials in other countries in the Western world. Such unconfronted, uncross-examined statements are recognized as particularly unreliable. As in this country, the reasons to forbid extrinsic information from consideration by the jury also have to do with all of the dangers (perception, sincerity, misunderstanding, etc.) of relying on uncross-examined extra-judicial statements. See, e.g., Farhi v. France, 48 Eur. Ct. H.R. 34 (2007) (right to a hearing by an impartial jury had been violated under Article 6(1) of the European Convention on Human Rights by ex parte or extra-judicial contacts and applicant granted a new trial); Gregory v. United, Kingdom, 25 Eur. Ct. H.R. 577, 578 (1997) (same). That a jury must deliberate in private, free from outside interference, is a principle with deep roots in English common law. The jury should decide the case exclusively on the evidence presented in the course of the trial, otherwise the verdict may be tainted. See R. v. Pan, [2010] 2 S.C.R. 344 (Can.).
* * *
The facts associated with the Fox-Jones ex parte conversation are that on May 18, 1995, the jury returned its death sentence against Sheppard. On May 30, 1995, the trial court conducted an in-chambers hearing when it learned from the prosecution that, during the trial, Fox had called Jones, a psychologist, to discuss the meaning and characteristics of “paranoid schizophrenia,” the defendant’s main defense against a death sentence. At that hearing, Fox testified that the conversation did not influence him in any way; when asked whether he discussed the psychological testimony with the other jurors, Fox answered, “I may have, but like I said, it was, there were a lot of other things.” Thus, at this hearing he testified that his conversation had no effect on his vote for the death penalty and that he “may” have discussed the conversation with other jurors. On motion for a new trial, the state court accepted Fox’s testimony that the communication with Jones had no effect or influence on his vote, while recognizing that the ex parte conversation was highly improper. The court denied the motion for a new trial, and the Ohio appellate courts accepted and affirmed this ruling on the ground that it had no influence. As will be explained below, under Ohio law this ruling in the appellate courts was final *352 and defense counsel could not attack it collaterally in state court.
When the case came to federal court on Sheppard’s request for federal habeas relief, Fox completely changed his no-influence testimony. He testified as follows:
Q. I don’t believe you answered my question. You do agree with me that the information that Ms. Jones gave to you influenced your verdict, is that correct?
A. I’m sure to some degree, small degree.
Q. So the answer’s yes?
A. Yes.
Q. And, again, to use your words, you agree that it contributed to your verdict of death; is that correct?
A. If that’s, yeah, if that’s what I said.
Q. Well, irrespective whether that’s what you said, as you sit here today you agree it contributed to your verdict?
A. Yes, it must have.
(J.A. 602-03.)
Jones, the psychologist, also changed her testimony from her earlier testimony immediately after the death verdict. She testified in state court that she had read the testimony of Sheppard’s expert psychiatric witness, Dr. Smalldon, and that what she told Fox about “paranoid schizophrenia” was completely consistent with the expert witness’s testimony. At the federal hearing, she testified that this was not true and that she did not know what the expert said in his testimony, nor did she know whether what she said earlier was consistent with Smalldon’s testimony. Smalldon then testified at the federal hearing that Jones’s statements to Fox in the ex parte phone conversation were completely inconsistent with his testimony and that his statements to the jury describing paranoid schizophrenia were quite different from what Jones told Fox. (J.A. 653-57; J.A. 774-88.)
In deciding the Fox-Jones issue, it appears that our Court has asked a proper question regarding juror Fox’s admission in the federal court habeas hearing, which is completely at odds with his previous state testimony: ‘Whether he [defense counsel] was diligent in developing the factual basis for his claim in state court”? (Maj. Opin., supra, p. 343) My colleagues recognize that the constitutional question may turn on this diligence issue because a lack of due diligence in developing the issue in state court may trigger procedural default.[2] A lack of due diligence could prevent the federal court from considering the admission that Fox gave in federal court that he was in fact influenced to vote for the death penalty by the ex parte, extra-judicial conversation.
Our Court’s error is that it gives precisely the wrong answer in this question of whether there was due diligence. It answers that defense counsel was derelict and lacked diligence in bringing the question forward without explaining how or why it considers post-conviction counsel to be unprofessional in this regard. The correct answer should be that defense counsel were exceedingly diligent in bringing out this fact that renders the death verdict unconstitutional. Defense counsel’s diligence is demonstrated by continuing to press the point even though counsel was stuck in state court with Fox’s statements that he was completely uninfluenced by his conversation with Jones. This no-influence statement was accepted at all levels in the state court, and Ohio procedural rules prohibited any further evidentiary *353 hearings or development of a factual basis in state court.
Defense counsel was thwarted in state court by an Ohio procedural rule of finality. Ohio law provides that “relief under R.C. 2953.21 [post-conviction relief] is not available where the defendant has litigated the issue by way of motion for a new trial or upon appeal,” State v. Walden, 483 N.E.2d 859, 866, 19 Ohio App.3d 141, 146 (1984) (a criminal case involving jury misconduct). Without a state forum, defense counsel did not give up, however, and should be commended for diligence, not criticized for raising and cross-examining Fox and Jones in the first federal forum available. As it happened, only in federal court could defense counsel show the cover up by Fox and Jones of the nature of their ex parte conversation. That is precisely the reason we have federal habeas corpus relief established in Article I, § 9 of the Constitution, the “suspension” of which is expressly forbidden. There is nothing in any federal statute or case that I can find that relieves a federal habeas court in these circumstances from considering the federal testimony and concluding that the rule of Parker v. Gladden, supra, was violated. A federal habeas court does not have the constitutional authority or discretion to excuse a state from complying with Due Process and Article I, § 9. In the end, this is a rather simple case calling for the issuance of the writ requiring a new trial at the sentencing phase of the case. A few months before Sheppard committed this crime, the facts show that he suffered a serious injury to his head that may well have produced the mental condition that led him to change his personality and commit this crime. Had Fox, and perhaps other jurors, not been distracted from the actual expert testimony by the Fox-Jones ex parte conversation, the death penalty may not have been imposed.
Beyond and independently of this type of standard legal analytic reasoning, there are deeper constitutional and ethical reasons to keep capital punishment, life or death, from turning purely on the quality — the “due diligence” — of counsel for the prisoner. The failure of counsel should ordinarily be regarded as “cause and prejudice” to overcome procedural problems that would otherwise default lawyer error into death, obliterating the prisoner’s right to a constitutionally correct trial. The Supreme Court has put the constitutional “cause and prejudice” standard into the following language:
In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law....
Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A lawyer’s “lack of diligence” in handling the case — if that is what led to a failure to correct a constitutionally defective trial— meets the constitutional test of “cause and prejudice.” And surely no American judges — no matter how much they may favor the death penalty as a matter of retributive justice — would want an individual to be executed as the result of a constitutionally defective trial caused by the prisoner’s lawyer.

. I find no language whatever in Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), that supports the statement of our concurring colleague that the Remmer case is no longer good law. As the D.C. Circuit said in United States v. Butler, 822 F.2d 1191, 1195 (1987), the Supreme Court and the Courts of Appeals, except for the Sixth Circuit, are in accord:
The proper legal standard for evaluating the effect of an alleged juror exposure to extra-judicial information, both sides here seem to agree, is that ‘‘[i]rrespective of the source of the alleged taint, it is the burden of the government to demonstrate that the jury was impartial, and that extrinsic information did not contribute to the verdict.” Brief for Appellee at 12.*

 This traditional approach was laid down in Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). In United States v. Pennell, 737 F.2d 521, 532 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct 906, 83 L.Ed.2d 921 (1985), the Sixth Circuit held that the Supreme Court’s subsequent opinion in Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), reinterpreted Remmer so as to shift the burden of showing prejudice to the defendant. No other federal appellate court, however, has departed from Remmer s statement of the legal standard for evaluating the effect of an improper judicial contact. See, e.g., United States v. Littlefield, 752 F.2d 1429, 1431-32 (9th Cir. 1985) (criticizing Pennell); Owen v. Duckworth, 727 F.2d 643, 646 (7th Cir. 1984); United States v. Webster, 750 F.2d 307, 338 (5th Cir.1984); cert. denied, 471 U.S. 1106, 105 S.Ct. 2340, 2340-41, 85 L.Ed.2d 855, 855-56 (1985); United States v. Delaney, 732 F.2d 639, 642 (8th Cir.1984); United States v. Hines, 696 F.2d 722, 730-31 (10th Cir.1982); Hobson v. Wilson, 111 F.2d 1, 47-49 (D.C.Cir. 1984); (civil case); cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); Haley v. Blue Ridge Transfer Co., 802 F.2d 1532, 1535 & n. 5 (4th Cir.1986) (civil case) (distinguishing Phillips). We think that Remmer's allocation of the burden remains the law.

. 28 U.S.C. § 2254(e)(1)(A) allows a federal evidentiary hearing to consider evidence “discovered through the exercise of due diligence.”